J. L. THOMPSON COMPANY v. E. R. COATS, A. V. COATS ET ALS.

(Filed 3 October, 1917.)

1. Husband and Wife—Separate Property—Executory Contracts.

Prior to the ratifications of the Martin Act, on March 6, 1911, a married woman could not bind her separate property by her executory contract, except in limited respects, without the written consent of her husband; nor could personal judgment be rendered against her thereon.

2. Same—Principal and Agent—Evidence—Landlord and Tenant.

The law does not imply an agency of the husband to act as such in behalf of his wife; and where the evidence in an action against her to recover for supplies furnished the tenants on her lands tends only to show that they were furnished to her husband as such tenant, and others, without direct benefit to herself; that she independently managed her own affairs and did not live on good terms with her husband, but apart from him, owing to his dissolute habits; that the supplies had been charged directly to the tenants, who farmed for a certain part of the crops raised

13—174

by them; that she had never authorized her husband to act as her agent, and that no demand for payment for the supplies had been made on her before the institution of the action: *Held*, no agency has been shown authorizing him to act for her, and recovery will be denied.

CIVIL ACTION, tried at February Term, 1917, of HARNETT Superior Court, before *Stacy, J.,* upon these issues:

1. Did the plaintiff, during the year 1911, sell and deliver to the defendant E. R. Coats goods, merchandise, supplies, fertilizer, etc., including a part of 1909 and 1910 account to the amount of $1,275.94? Answer: Yes.

2. Did the defendant E. R. Coats accept and use said goods, merchandise, and fertilizer upon the lands of his wife, A. V. Coats, with her knowledge, consent and procurements? Answer: Yes.

3. If so, did the use of said goods, merchandise, and fertilizer improve said lands? Answer: Yes.

4. Did the defendant A. V. Coats accept and use the benefits of said goods and improvements with notice thereof? Answer: Yes.

5. Was the defendant E. R. Coats, as the husband of the defendant A. V. Coats, acting as the agent of his wife at the time of the sale and delivery of said goods, merchandise and fertilizer, as alleged in the complaint? Answer: Yes.

6. Did the plaintiff have knowledge of said agency and act upon the same in good faith in selling and delivering said goods? Answer: Yes.

7. Has the defendant A. V. Coats ratified the contract and purchase of said goods, fertilizer, etc.? Answer: Yes.

8. Was the defendant E. R. Coats insolvent during the years 1909, 1910, and 1911? Answer: Yes.

9. Did the defendant A. V. Coats cultivate and use for the benefit of herself and family a large amount of real estate during the years 1909, 1910, and 1911? Answer: Yes.

Other issues were submitted relating to the validity of certain deeds executed by Mrs. A. V. Coats to her children, which it is unnecessary to set out.

From the judgment rendered, the defendants appealed.

*J. F. Wilson and R. L. Godwin for plaintiff.*
*J. W. Wilson, C. L. Guy, and E. F. Young for defendants.*

BROWN, J. The purpose of this action is to charge the defendant, Mrs. A. V. Coats, with goods, merchandise, and fertilizer purchased from plaintiffs by her husband (now deceased)) during the years 1909, 1910, and 1911, upon the ground that the husband purchased them as her agent, by her authority and for her benefit, and that she ratified the purchase.

The complaint also alleges that defendant, Mrs. Coats, executed certain deeds to the other defendants, her children, subsequent to 1911, conveying certain lands for the purpose of defeating the collection of plaintiff's debt. The complaint demands that the deeds be set aside and that plaintiff's debt be declared a lien upon the lands, and that they be sold to pay the judgment.

Prior to the ratification of the Martin Act, on 6 March, 1911, the power of a married woman to enter into an executory contract was greatly restricted. The only way in which her separate property could be subjected to the discharge of her debts, even with the written assent of her husband, was by a specific charge or by showing a beneficial consideration peculiar to herself. In such cases her separate estate might be charged with her obligations, not upon the theory that she had contracted a debt, but that under certain circumstances her obligation constituted a charge which courts of equity would enforce. If the wife had no separate estate that a decree could charge, then there was no legal remedy, for no personal judgment could be rendered against her.

Where the object of the action was to charge her separate real estate, as in this case, it could only be done by showing a written instrument sufficient in form and duly executed by husband and wife, with privy examination of the latter. Furthermore, the *feme covert* was prohibited by the statute from entering into *any executory* contract whatever without the written assent of her husband, except where the consideration is for her necessary personal expenses, for support of her family, or to pay an ante-nuptial debt. In such cases she could charge her estate without the consent of her husband.

This subject has been so fully discussed in numerous well-considered opinions of this Court that it is useless to do more than refer to a few of the leading cases: *Flaum v. Wallace,* 103 N. C., 297; *Farthing v. Shields,* 106 N. C., 295; *Harvey v. Johnson,* 133 N. C., 352; *Vann v. Edwards,* 135 N. C., 661; *Ball v. Paquin,* 140 N. C., 86; *Bank v. Benbow,* 150 N. C., 784.

There is no evidence of any written assent upon the part of the husband of Mrs. Coats, and no evidence that she contracted this debt for her *necessary personal* expenses or for the support of her family.

Therefore, it is manifest that prior to the Martin Act plaintiff could not recover, and as that act is not retroactive, neither the separate real or personal estate of Mrs. Coats can be charged for the alleged indebtedness contracted prior to its ratification.

The statement of account (Exhibit A) is not attached to the record, and we cannot tell how much of the supplies of 1911 was received after the ratification of the Martin Act, but the evidence shows the contract to

furnish them, made by plaintiff and the husband, was in February and prior thereto.

But, assuming they were purchased after such ratification, upon the evidence, we are of the opinion that plaintiff has failed to show any liability upon the part of Mrs. Coats.

The evidence shows that she was the owner of considerable real estate, consisting of farms and a store and other property. She resided in Dunn and only a short distance from plaintiff's place of business. Her farms were rented out to tenants for a certain number of bales of cotton of 500 pounds each. Mrs. Coats testifies that she was not to furnish anything. There is nothing to contradict her statement.

The plaintiff's evidence shows that the supplies were furnished to the tenants, who were the father and brother of E. R. Coats, and one McKeathan. Plaintiff's witness, Parker, testified: "The agreement was that Mr. Coats came down there and asked Mr. Thompson if he would furnish these supplies to the tenants, and he said he would, and after that was done I waited on these tenants. E. R. Coats paid what was paid on the account. No part of the balance ever been paid. As the goods were sent, I gave each tenant a bill." The witness further testified that the account was charged in the name of E. R. Coats, and not to Mrs. Coats, and that the goods were delivered at the request of E. R. Coats to the tenants. A very large part of the account appears to have been for fertilizer delivered in January and February, 1911, to the father and brother of E. R. Coats and to McKethan.

It appears in plaintiff's evidence that Mrs. Coats bought two carloads of fertilizer from plaintiff in 1911, and that she gave note and mortgage to plaintiff for $500, due 1 November, 1911, and that she paid it.

It further appears in evidence that Mrs. Coats, although living very near plaintiff's place of business, was never notified of the transaction between plaintiff and her husband, and that no demand was ever made on her until suit commenced, and that she had no personal knowledge of such transactions.

Mrs. Coats testified: "That she was the wife of E. R. Coats; that she did not authorize her late husband or any one else to buy any goods or supplies upon her credit from J. L. Thompson Company at any time; that there was nothing bought from the plaintiff during 1909, 1910, and 1911 by her husband nor any of her tenants with her knowledge or consent; that she did not know of any fertilizer having been bought from the plaintiff during said years and used on any of her land; that during said year she rented her land to C. R. Coats; that she did the renting and he paid the rents to her; that E. R. Coats was not her agent for any purpose; that E. R. Coats died in June, 1916, and that she attended to

her own business, and that she and her husband had not been living on good terms for twelve or fifteen years; that during this period he had left home occasionally and lived separate and apart from her." ·

Witness Lee testified that Coats was a drinking man and that he and his wife had trouble and lived separate in 1911.

Upon such evidence as this record presents, we think it would be a variance with the principles of the law of agency to hold that the husband was the agent of his wife and authorized to bind her and her property to the payment of the plaintiff's debt.

The mere relationship of husband and wife is not evidence of authority of the husband to act as the agent or lease the property of the wife. He has no power to bind her by a contract simply because of the marital relation, and no presumption arises from it. *Realty Co. v. Bumbrough,* 172 N. C., 741.

If any such presumption arose from such relation, it would in this case be rebutted by the fact that during 1911 Coats and his wife lived separate and apart, a condition brought about by his dissipated habits, and which existed when this debt was contracted.

All the evidence shows that Mrs. Coats is a woman of independent means, and supports her family; that she contracted only one debt with plaintiff in 1911, and secured it by mortgage, which she paid. She knew nothing of her husband's transactions with plaintiff to secure suplies for his father and brother and McKethan, and she made no contract to furnish such supplies. None of the goods were used for her own household or personal expenses.

The plaintiff never notified her until suit was brought that he had any account against her, or made any demand on her. The goods were never charged to her, but always to her husband. The only debt she contracted with plaintiff in 1911 was secured by a mortgage and promptly paid.

We think the precedents in this Court are decidedly against holding the wife liable upon the evidence in this case.

In *Branch v. Ward,* 114 N. C., 149, it is held that "Only positive and unequivocal assent of the wife to a disposition by her husband of crops raised on her land, and not mere silence, will estop her from asserting her title to the same."

In *Wells v. Betts,* 112 N. C., 283, the Court holds: "Where a husband without the authority, joinder or knowledge of his wife, mortgaged the crops on her lands for supplies, which were expended in making the crops, and the mortgagee had notice of the wife's ownership, and there was no evidence of any representations made by the wife by which the mortgagee was misled, the mortgagee acquired no rights to such crops as against the wife." Notwithstanding, "Acquiescence by wife for several years previous in the management and control by her husband of her

lands, and the disposition by him of the crops grown thereon, does not, of itself, authorize the husband as her agent to mortgage the crops to one having notice of her ownership."

In the opinion *Chief Justice Shepherd* well says: "It is better that the law should require her (the wife's) positive and unequivocal assent than to destroy the domestic tranquillity by forcing her at the peril of forfeiting her rights to exercise a constant and irritating surveillance over the conduct and the management and cultivation of her lands or their joint support. No inconvenience can result from such a ruling, as it is quite easy for a party making advances to require that she be joined as a party to the mortgage." See, also, *Rawlings v. Neal,* 122 N. C., 175; *Evans v. Cullen,* 122 N. C., 55; *Bray v. Carter,* 115 N. C., 16.

*Bazemore v. Mountain,* 121 N. C., 60, differs essentially from this case. The evidence tending to prove the agency of the husband was not sent up and is not stated in the opinion or in the report of the case. The case was decided by this Court upon the following statement in the case on appeal, viz.: "That the defendant, W. E. Mountain, was the agent of the *feme* defendant, and as such agent he contracted with the plaintiff to furnish the supplies sued for in this action. And his Honor says, in making up the case on appeal, that there was evidence tending to prove all these facts."

In the case at bar all the evidence is sent up and comes before us for review, and upon that evidence we are of opinion that the motion to nonsuit must be sustained and action dismissed.

Let the judgment be entered accordingly.

Reversed.