L. HARVEY AND SON COMPANY, T/A ONSLOW IMPLEMENT COMPANY v.
JERRY E. JARMAN AND WIFE, EDNA L. JARMAN (ALSO KNOWN AS POLLY
JARMAN) v. JARVIS BROWN

No. 848SC1087

(Filed 6 August 1985)

1. Appeal and Error § 42— presumption of regularity of trial proceedings

There is a presumption in favor of regularity and correctness in pro-
ceedings in the trial court, and the burden is on the appellant to show error.

2. Agriculture § 9— defective fertilizer—breach of implied and express warran-
ties—insufficient evidence

The trial court properly directed a verdict for plaintiff on defendants'
counterclaim for breach of implied warranty of fertilizer where the evidence
showed that defendants never complied with the prerequisites of G.S.
106-662(e)(4) for bringing a suit based on defective fertilizer. Furthermore, the
trial court properly directed a verdict for plaintiff on defendants' counterclaim
for breach of express warranty of fitness of the fertilizer for use on a corn
crop where no evidence was produced at trial indicating that the fertilizer was
not suitable for corn.

3. Rules of Civil Procedure § 50; Trial § 31— directed verdict without motion
therefor

A trial judge has the authority to direct a verdict for a party even though
such party has not made a motion for a directed verdict. However, trial judges
should use such authority sparingly in view of the low evidentiary threshold
necessary to take a case to the jury and the detailed procedure outlined in
G.S. 1A-1, Rule 50, which presumes the use of a motion before a verdict is
directed.

4. Bills and Notes § 20— action on note—prima facie case

Plaintiff made out a *prima facie* case for recovery on a promissory note
where plaintiff introduced the note into evidence and defendants stipulated
that their signatures on the note were genuine.

5. Bills and Notes § 4— promissory note—alleged defective goods—consideration

A note given for the purchase of fertilizer was properly supported by a
valid consideration where the amount of fertilizer purchased was delivered and
applied although defendants claimed the fertilizer was defective.

**6. Bills and Notes § 20— promissory note—failure to state annual percentage rate**

Recovery on a promissory note was not precluded because it did not state an annual percentage rate where the trial court limited interest on the note to the legal rate of eight percent.

**7. Husband and Wife § 3.1— promissory note—agency of husband for wife**

A note executed by defendants for the purchase of fertilizer was not void as to defendant wife on the ground that she had not purchased any supplies from plaintiff where the evidence showed that defendants were engaged in farming together, that defendant wife shared in any money made in the farming operation, and that defendant husband was acting as his wife's agent in purchasing farm supplies and establishing an account with plaintiff.

**8. Attorneys at Law § 7.4— promissory note—provision for attorney fees—failure to give notice**

The trial court erred in awarding attorney fees to plaintiff in an action on a promissory note containing a provision for attorney fees where no notice of plaintiff's intention to collect attorney fees was ever mailed to defendant makers as G.S. 6-21.2(5) requires.

APPEAL by defendants from *Barefoot, Judge.* Judgment entered 6 June 1984 in Superior Court, LENOIR County. Heard in the Court of Appeals 10 May 1985.

*Barnes, Braswell & Haithcock, P.A., by Henson P. Barnes, and Perry, Perry & Perry, by Warren S. Perry, for plaintiff appellee.*

*Lee, Hancock, Lasitter and King, by John W. King, Jr., for defendant appellants.*

BECTON, Judge.

I

Plaintiff, L. Harvey and Son Company (Harvey), filed this suit to recover on a promissory note given for the purchase of fertilizer, executed by defendants Jerry Jarman (Jarman or Mr. Jarman) and Edna Jarman (Mrs. Jarman), plus interest and attorney's fees. The Jarmans' Answer included a number of affirmative defenses and counterclaims. The Jarmans also filed a third-party Complaint against Jarvis Brown, alleging that Brown was personally liable to them for breach of an express warranty on the fertilizer, if in making the warranty, Brown exceeded the scope of his agency relationship with Harvey.

An order was entered dismissing the Jarmans' first counterclaim, and the Jarmans' motion for a change of venue was denied. The Jarmans moved for summary judgment on the note, which was also denied. However, their alternative motion for partial summary judgment on the issue of interest on the note was allowed.

When the case came on for trial, Harvey introduced the note into evidence and rested. After the Jarmans had put on their evidence, the record reflects a discussion between the trial judge and counsel concerning the dismissal of one or more of the Jarmans' counterclaims, with the trial judge reserving his ruling on the motion to dismiss. Harvey put on rebuttal evidence. The trial judge then allowed the motion to dismiss all of the Jarmans' counterclaims, and also directed a verdict in favor of Harvey on the note.

Judgment was entered, awarding Harvey the amount of the note plus interest and attorney's fees. The Jarmans appeal, contending that (1) it was error to dismiss all of the Jarmans' counterclaims, when no motion was made to dismiss their warranty counterclaims, (2) it was error to direct a verdict for Harvey on the note when Harvey had not moved for a directed verdict, and (3) it was error to award attorney's fees. We conclude that it was not error for the trial judge to dismiss the counterclaims, nor was it error to direct a verdict in Harvey's favor on the note. The trial court did, however, err in awarding attorney's fees, and the judgment is to be modified accordingly.

II

*Factual Background*

Jerry Jarman and Edna Jarman, husband and wife, are farmers. In the spring of 1980, Jerry Jarman purchased liquid fertilizer for that year's corn crop and other farm supplies from Harvey. He testified that he spoke with two of Harvey's employees, A. W. Turner and Jarvis Brown, concerning the purchase of fertilizer. Jarman testified that both Turner and Brown told him that the recommended liquid fertilizer, "Super Kic," would work as well as dry fertilizer, and that Turner recommended an application of "Super Kic" at a concentration 400 pounds per acre. Jarman testified that he purchased the recommended

amount of "Super Kic" from Harvey, and that in early April 1980, Turner, using company equipment, applied the liquid fertilizer. Jarman testified that Turner applied "Super Kic" liquid fertilizer to 201 of the 373 acres of corn Jarman planted that year. He testified that when Turner ran out of "Super Kic," Turner recommended an application of dry fertilizer at a concentration of 500 pounds per acre. Jarman agreed, and the dry fertilizer was applied to the remaining acres. Turner testified that at least some of Jarman's land was not properly prepared, as it had "a lot of tall weeds in it." Jarman testified that he was present when Turner spread the fertilizer, and it seemed to him that Turner did a good job.

Jarman testified that he followed the identical procedure in preparing and planting all of the 373 acres, except that in the fields in which "Super Kic" liquid fertilizer was used, weed killer was mixed in with the fertilizer. Turner testified that these herbicides would not affect the effectiveness of the fertilizer.

Jarman testified that in the fields in which dry fertilizer was used, he had a good crop of corn in 1980, averaging 90 bushels of corn per acre; however, in the fields fertilized with "Super Kic," the corn quickly turned yellow. Although liquid nitrogen was ultimately used on the "Super Kic" fields so that the corn turned green and grew, these fields yielded very little corn, averaging 25 or fewer bushels per acre.

Turner testified that the "Super Kic" liquid fertilizer came premixed from a common storage tank and that Ed Greer had his 1980 corn crop fertilized with "Super Kic" from that tank the same week as the Jarmans. Greer testified that he applied additional fertilizer to the fields that had been fertilized with "Super Kic" at 400 pounds per acre, and he achieved a crop yield of 100 bushels of corn per acre that year.

Brown testified that he first received a complaint about Mr. Jarman's corn crop in early May 1980, when Jarman complained about weeds in his fields. Brown stated that he and the county agent went out to look at the land. Turner testified that the first time he knew something was wrong with Jarman's corn crop was during spring or summer 1980, when he and his wife rode through the Jarmans' farm. Turner stated that although he was sure he stopped and talked with Mr. Jarman, he never discussed any

problems with anyone at Harvey. Jarman testified that he discussed his problems with the corn crop with Turner, when he first became aware of them, and that a week or two later he told Brown that his "corn was sitting there yellow and wasn't growing a bit."

There was uncontradicted evidence that there was an open account between Harvey and Jerry Jarman in Jarman's name, and that in December 1980, Jerry and Edna Jarman signed a promissory note in the amount of $22,638.93, which represented the balance owed on the account for both "Super Kic" fertilizer and other items purchased from Harvey. Brown testified that it was Harvey's policy to have customers with outstanding accounts sign promissory notes at the end of the year. As of June 1981, a balance of $10,148.77 remained on that account, which Jarman testified represented the approximate amount due for "Super Kic" fertilizer. On 29 June 1981, Jerry and Edna Jarman signed a second promissory note for $10,148.77, which note is the subject of this action. Harvey's retired vice-president testified that no payments have been made on this note.

III

The Jarmans asserted four counterclaims in their Answer. The record shows that, after the presentation of Harvey's rebuttal evidence, the trial judge dismissed "all" of the counterclaims. The Jarmans contend that this was error, as Harvey had only moved to dismiss their third counterclaim, which was based on negligence. We disagree.

Harvey apparently originally made the motion to dismiss at the close of the Jarmans' evidence. No transcript of the trial proceedings was filed with this Court, and the pertinent portion of the printed record is incomplete. Significantly, the caption "MOTION BY MR. PERRY:" [Harvey's counsel], appears, but what counsel actually said does not appear. A few lines later appears: "MR. KING: [Jarman's counsel] Arguments Opposing Motion To Dismiss." Again, what counsel actually argued is missing. Therefore, we have no way of knowing which counterclaims were referred to in the motion.

[1] The longstanding rule is that there is a presumption in favor of regularity and correctness in proceedings in the trial court,

with the burden on the appellant to show error. *In re Moore*, 306 N.C. 394, 293 S.E. 2d 127 (1982), *app. dism.*, 459 U.S. 1139, 74 L.Ed. 2d 987, 103 S.Ct. 776 (1983). *Accord State v. Williams*, 274 N.C. 328, 163 S.E. 2d 353 (1968) (reviewing court not required to, and should not, assume error by trial judge when none appears in the record before the reviewing court). Here, in the absence of a complete record, we presume a proper motion to dismiss all of the Jarmans' counterclaims was made. Accordingly, we turn to the merits.

The first counterclaim, relating to the Truth-In-Lending Act, had been dismissed prior to trial by order of the court. The second counterclaim, concerning the genuineness of signatures, was obviously dropped in that the Jarmans stipulated to having signed the note. As to the third counterclaim, based on Harvey's negligence in mixing and spreading the fertilizer, the Jarmans concede that no evidence was adduced to support a claim for negligence, and they do not argue this point in their brief. *See* N.C. Rules App. Proc., Rule 28(a) (questions raised but not briefed deemed abandoned).

**[2]** The fourth counterclaim is based on allegations of breach of express and implied warranties, specifically, that Harvey breached an express warranty that "Super Kic" was an excellent fertilizer and suited for the Jarmans' corn, and an implied warranty, in that the fertilizer was defective and hence not fit for the ordinary purposes for which it was intended. In determining whether these warranty counterclaims were correctly dismissed, the case of *Potter v. Tyndall*, 22 N.C. App. 129, 205 S.E. 2d 808, *cert. denied*, 285 N.C. 661, 207 S.E. 2d 762 (1974), is instructive. In that case, a seller of fertilizer sued on an account and the buyer counterclaimed against the seller and its agents, alleging that the agents had falsely represented to him that the fertilizer was a good one for use on tobacco, when it, in fact, caused his crop to wither and die. The trial court dismissed the counterclaim. The sole issue on appeal was whether the buyer's counterclaim could be maintained on theories of express or implied warranty. Crucial to this Court's resolution of the issue was the effect of former N.C. Gen. Stat. Sec. 106-50.7(e)(4) (1975) (recodified as N.C. Gen. Stat. Sec. 106-662(e)(4) (1978)). The current statute provides in pertinent part that:

No suit for damages claimed to result from the use of any lot of mixed fertilizer or fertilizer material may be brought unless it shall be shown by an analysis of a sample taken and analyzed in accordance with the provisions of this Article, that the said lot of fertilizer as represented by a sample or samples taken in accordance with the provisions of this section does not conform to the provisions of this Article with respect to the composition of the mixed fertilizer or fertilizer material, unless it shall appear to the Commissioner that the manufacturer of the fertilizer in question has, in the manufacture of other goods offered in this State during such season, employed such ingredients as are prohibited by the provisions of this Article, or unless it shall appear to the Commissioner that the manufacturer of such fertilizer has offered for sale during that season any kind of dishonest or fraudulent goods or unless it shall appear to the Commissioner that the manufacturer of the fertilizer in question, or a representative, agent or employee of the manufacturer, has violated any provisions of G.S. 106-663.

N.C. Gen. Stat. § 106-662(e)(4) (1978).

In construing the effect of this statute on the buyer's warranty claims, this Court reasoned that when a litigant alleges damages caused by the use of an inherently defective fertilizer, the statutory prerequisites must be complied with. We further reasoned that since an action to recover damages for breach of an implied warranty is, in essence, an action based on inherent defects of the goods, an action based upon a theory of implied warranty of merchantability falls within the statutory ambit. However, this Court held that when a litigant alleges that losses are the result of false statements concerning fertilizer which constitute an express warranty of fitness, such a buyer is not required to comply with the statutory prerequisites. The Court made this distinction because, when a fraudulent misrepresentation is involved, compliance with the statute is impossible, and thus, application of the statute to express warranty cases would merely give sellers a "license to defraud." In *Potter v. Tyndall*, summary judgment for the seller was reversed, although G.S. § 106-50.7(e)(4) (1975) was not complied with, because the evidentiary forecast supported recovery on a theory of breach of ex-

press warranty of fitness, namely, that the fertilizer was not suitable for use on tobacco.

In applying here the principles outlined in *Potter v. Tyndall,* the evidence shows that the Jarmans never complied with the statutory prerequisites. It was therefore not error to direct judgment in Harvey's favor on the implied warranty portion of the counterclaim.[1] As to the express warranty claim, although the representations allegedly made to Mr. Jarman by Harvey's agent, that "Super Kic" was an excellent fertilizer and suitable for use on Mr. Jarman's corn crop, constitute an express warranty, there was absolutely no evidence produced at trial indicating that "Super Kic" was not a suitable corn fertilizer. *Cf. Potter v. Tyndall* (evidence that fertilizer in question not registered as a tobacco fertilizer). Therefore, on the question of breach of express warranty of fitness, there was nothing for a jury to decide, and the trial court properly directed judgment for Harvey.

For all the foregoing reasons, the trial judge acted properly in dismissing all of the Jarmans' counterclaims.

IV

Having dismissed the Jarmans' counterclaims, the trial judge announced in open court that he was "allowing judgment for the plaintiff on the note." The written judgment accordingly reflects a directed verdict in Harvey's favor on the note. The Jarmans contend that it was error to direct a verdict for Harvey because Harvey had never made a motion for a directed verdict. Harvey responds that the uncontroverted evidence was that the account was owing and the note unpaid, and that therefore it was entitled to judgment as a matter of law.

[3] The record before us indicates that Harvey never moved for a directed verdict. The authority of a trial judge to direct a verdict *sua sponte,* in the absence of a motion therefor, appears to be a question of first impression in this jurisdiction. Rule 50 of the North Carolina Rules of Civil Procedure provides that a party may make a motion for a directed verdict at the close of the evi-

---

1. Although Harvey "moved to dismiss" the counterclaims, as the case was heard before a jury, and both parties had presented evidence, the motion should have been for a directed verdict. *See* N.C. Rules Civ. Proc., Rule 50 (directed verdict). CF Rule 41(b) (involuntary dismissal).

Harvey and Son v. Jarman

dence, but must state the specific grounds on which the motion is based. Although under Rule 50 it is "clearly contemplated" that a motion be made, the language of Rule 50 does not directly authorize it. *Safeway Stores v. Fannan*, 308 F. 2d 94 (9th Cir. 1962) (interpreting similar federal rule). And the courts that have addressed the issue of whether a trial judge can direct a verdict of his or her own initiative have generally answered this inquiry in the affirmative. *See Aetna Cas. and Sur. Co. v. L. K. Comstock & Co.*, 488 F. Supp. 732 (D. Nev. 1980), *rev'd on other grounds*, 684 F. 2d 1267 (9th Cir. 1982) (observing that similar federal Rule 50 only concerns itself with a motion made by a party and the effect of a denial thereof; one source of federal district court's authority to direct verdict is its "inherent and independent discretionary powers"); *Peterson v. Peterson*, 400 F. 2d 336 (8th Cir. 1968) (when record left no issue of fact to be resolved by special interrogatories, formal motion not required for court to draw legal conclusions and to direct verdict); *Home Trust Co. v. Josephson*, 339 Mo. 170, 95 S.W. 2d 1148 (1936) (courts of general jurisdiction exercising common law powers have inherent power to direct verdict where facts are admitted).

Likewise, the North Carolina superior court is a court of general jurisdiction exercising equitable powers. *Cocke v. Duke University*, 260 N.C. 1, 131 S.E. 2d 909 (1963); *Walton v. Walton*, 80 N.C. 26 (1879) (superior court is court of general common law jurisdiction). *See* N.C. Const. art. IV, sec. 12 (3). We conclude that the trial judge in the instant case had the authority to direct a verdict of his own initiative. However, mindful of the low evidentiary threshold necessary to take a case to the jury, and also of the detailed procedure outlined in Rule 50, which presumes the use of a motion before a verdict is directed, we do not encourage the frequent use of this practice, and caution trial judges to use it sparingly.

Holding as we do that the trial judge had the authority to direct a verdict, we must determine whether Harvey was entitled to judgment on the note as a matter of law. In deciding whether to direct a verdict, the trial judge is presented with the question of "whether the evidence, when considered in the light most favorable to the party against whom the motion is made, [is] sufficient for submission to the jury." *Sink v. Sink*, 11 N.C. App. 549,

550, 181 S.E. 2d 721, 721 (1971). Applying this standard to the evidence at bar, we find a directed verdict proper.

[4] The requirements of a *prima facie* case in a suit on a negotiable instrument, such as a promissory note, are as follows: "When signatures are admitted or established, production of the instrument entitles a holder to recover on it unless the defendant establishes a defense." N.C. Gen. Stat. Sec. 25-3-307(2) (1965). *See* N.C. Gen. Stat. Sec. 25-3-104 (1965) (defining negotiable instrument). At trial, Harvey produced and offered the note into evidence. Although both Mr. Jarman and Mrs. Jarman denied signing the note in their Answer, the Jarmans subsequently stipulated that their signatures were genuine. We conclude that Harvey made out a *prima facie* case for recovery on the note.

[5] In their Answer, however, the Jarmans raised six affirmative defenses, and we must review the evidence in light of these defenses to determine whether Harvey's *prima facie* case was rebutted so that Harvey's claim should have been submitted to the jury. The Jarmans' first two defenses are that they did not sign the promissory note and that their signatures were forged. As we have discussed, no issue remains as to the genuineness of the Jarmans' signatures. The third defense is that there was no consideration for the note in that the fertilizer provided was "improperly mixed or damaged." In our opinion, the note was properly supported by valid consideration. The amount of fertilizer purchased was delivered and applied. Any defects in the goods goes to the Jarmans' counterclaim for damages, not to the validity of consideration. *See Trio Estates, Ltd. v. Dyson*, 10 N.C. App. 375, 178 S.E. 2d 778 (1971).

[6, 7] Fourth, the Jarmans state that the note did not state an annual percentage rate. The record contains an order granting partial summary judgment for the Jarmans limiting any interest on the note to the legal rate of eight per cent (8%). Fifth, the Jarmans argue that the note was void as to Mrs. Jarman for want of consideration in that she had not purchased any supplies. This defense, too, is without merit. Mrs. Jarman herself testified that: "I help Mr. Jarman in the tobacco farming and I share the money that he makes from any of the farming operation. I share whatever we produce on the farm." In purchasing supplies from Harvey and establishing an account with them, Mr. Jarman was

indisputably acting as his wife's agent. *See Dubose Steel, Inc. v. Faircloth,* 59 N.C. App. 722, 298 S.E. 2d 60 (1982) (marital relationship alone does not establish agency; however, only slight evidence is necessary when wife receives and retains benefit of contract negotiated by husband). *Cf. J.L. Thompson Co. v. Coats,* 174 N.C. 193, 93 S.E. 724 (1917) (parties were separated; evidence insufficient to show agency of husband to bind wife's property for payment of debt to purchase fertilizer). Finally, the Jarmans alleged that they had been promised 15% credit or discount on the fertilizer. Harvey replied that this discount was only to have been effective if the Jarmans paid their bill by 1 June 1980, which they did not do. At trial, no evidence whatsoever was introduced on this point; as a matter of law, then, the Jarmans did not meet their burden of proof on their sixth affirmative defense.

Thus, as Harvey made out a *prima facie* case on the note that was not rebutted by the Jarmans, the trial court properly directed a verdict in Harvey's favor on the promissory note.

V

[8] Finally, the Jarmans contend, and Harvey concedes, that the trial court erred in awarding attorney's fees to the plaintiff because of a lack of compliance with the notice provision of N.C. Gen. Stat. Sec. 6-21.2 (1981). Provisions relative to the payment of attorney's fees are not enforceable unless expressly authorized by statute. *Stillwell Enterprises, Inc. v. Interstate Equip. Co.,* 300 N.C. 286, 266 S.E. 2d 812 (1980). G.S. Sec. 6-21.2 is such a statute. It allows recovery of attorney's fees incurred in the collection of a note subject to certain conditions. One of these conditions is found in G.S. Sec. 6-21.2(5), which provides that notice must be given to the maker of the note before attorney's fees may be recovered.

At bar, although the note sued upon provides for attorney's fees of up to 15% of the unpaid balance, the record shows, and the plaintiffs admit, that there was no evidence that any notice of plaintiff's intention to collect attorney's fees pursuant to G.S. Sec. 6-21.2 was ever mailed to the defendants. Thus, the provision in question relating to attorney's fees is void and unenforceable.

## VI

In conclusion, we find that the trial judge correctly directed a verdict in favor of Harvey on the promissory note, and also acted correctly in dismissing the Jarmans' counterclaims. However, it was error to award attorney's fees, and the judgment is to be modified accordingly.

Modified and affirmed.

Judges PHILLIPS and EAGLES concur.