INMAN, Judge.
 

 *736
 
 Caleb E. Wardrett ("Defendant") appeals his conviction following a jury verdict finding him guilty of possession of a firearm by a felon. After careful review of the record and applicable law, we conclude that Defendant failed to submit an adequate record on appeal to support his challenge to the unanimity of the jury verdict. We also reject Defendant's argument that the prosecutor's comments during closing argument were so grossly improper that the trial court should have intervened absent objection.
 

 *737
 

 Procedural and Factual Background
 

 The evidence presented at trial tended to show the following:
 

 On the night of 27 September 2014, Alberta Jones ("Alberta") hosted a party at her house in Rocky Mount with family, friends, and neighbors attending. Shortly before 1:00 a.m., just outside of Alberta's house, Defendant's cousin, Anthony Austin ("Anthony"), and Ricky Jones ("Ricky") engaged in an argument over whether Ricky had given Anthony fake money. Defendant participated in the quarrel, causing Ricky to retrieve his shotgun from his home, which was nearby, because he knew Defendant likely had a gun. When Ricky returned with his shotgun, Defendant pointed his gun at Ricky and ordered Ricky to drop the shotgun. Defendant then fired his own gun in the air several times. Robert Earl Jones ("Robert"), Ricky's uncle, urged Defendant and Ricky to stop arguing. Alberta then called the police.
 

 Before the police arrived, Defendant gave his gun to a friend, Ronaldo Wesson ("Ronaldo"), who took the gun to a house across the street owned by his uncle, Joseph "JoJo" McClain ("JoJo"), and stowed the gun under the mattress in JoJo's bedroom. Rocky Mount Police Officer William Spikes and Officer Judd (collectively "the Officers") responded to the gunshot call. Defendant left the area before the Officers arrived. No witness was willing to say who had fired a gun. The Officers did not find Defendant's gun or Ricky's shotgun, but they found gun shell casings near the area where Defendant, Anthony, and Ricky had been quarreling.
 

 After the Officers left, Anthony struck Ricky, who then shot and killed Anthony. About five minutes after the Officers left from responding to the first gunshot call, they received another call to Alberta's house, where they returned and found Ricky walking on the road away from the house, shotgun in hand. The Officers arrested Ricky.
 

 Detectives Darius Hudgins and John Denton (collectively "the Detectives") arrived to investigate the homicide. Defendant, who had returned to Alberta's house by the time the Detectives arrived, agreed to go to the police station to give a statement, but he never followed up.
 

 Both Ricky and Robert told the Detectives that it was Defendant who had fired the gun that prompted the first call to police. JoJo guided the Detectives to the gun that was hidden under the mattress at the behest of Defendant, and Ronaldo told the Detectives that Defendant had given him the gun to hide.
 

 *191
 
 The gun the Detectives retrieved from beneath the mattress was a Smith & Wesson 9 millimeter handgun with an extended clip. The shell
 
 *738
 
 casings found by the Officers following the first call were not tested to determine whether they were from that gun, nor were any fingerprints found on the gun. But among the 23 bullets found within the gun-the extended clip could hold a maximum of 30-five had "the same manufacturer, color and caliber of what was found" on the ground by Alberta's house.
 

 A warrant was issued for Defendant's arrest on 27 September 2014. He was eventually located and arrested in Norfolk, Virginia.
 

 At the close of the State's evidence, defense counsel moved to dismiss the charge, and the trial court denied the motion. Defendant did not present evidence. The jury found Defendant guilty of possession of a firearm by a felon. The trial court sentenced Defendant to minimum of 19 months and maximum of 32 months in prison, with credit for time served in pre-trial custody. Defendant timely appealed.
 

 Analysis
 

 I. Unanimous Jury Verdict
 

 Defendant's first argument concerns a juror entering the courtroom during the jury charge conference on the flight instruction. The trial transcripts reflects the following:
 

 MADAM COURT REPORTER: Judge,-
 

 MR. TUCKER: -details.
 

 MADAM COURT REPORTER: -there's a juror. There's a juror coming in.
 

 THE COURT: Thank you, Madam Court Reporter. I saw her. I [sic] didn't even dawn on me. You may continue.
 

 Defendant contends that, because the juror entered the courtroom during the charge conference and possibly became privy to information outside the presence of the other jurors, Defendant's right to a unanimous jury verdict, pursuant to N.C. Const. Art. I, § 24, was violated. We will not consider this issue because Defendant did not provide a sufficient record to allow meaningful appellate review.
 

 "It is the appellant's responsibility to make sure that the record on appeal is complete and in proper form."
 
 Miller v. Miller
 
 ,
 
 92 N.C. App. 351
 
 , 353,
 
 374 S.E.2d 467
 
 , 468 (1988). When a defendant is faced with an incomplete transcript, he can reconstruct the relevant portions through a written narrative.
 
 See
 
 N.C. R. App. P. 9(c)(1) ("Parties shall use [narrative] form or combination of forms best calculated under
 
 *739
 
 the circumstances to present the true sense of the required testimonial evidence concisely and at a minimum expense to the litigants.");
 
 id.
 
 9(a)(3)(e) ("The record on appeal in criminal actions shall contain: so much of the litigation, set out in the form provided in Rule 9(c)(1), as is necessary for an understanding of all issues presented on appeal...."). Here, the transcript is devoid of any information beyond the lone juror's entrance into the courtroom during the charge conference. The record is silent as to whether the juror proceeded past the courtroom door. The trial court's statement "You may continue" suggests that the juror immediately exited the courtroom. After this statement by the trial court, defense counsel continued with her argument, rather than objecting, which also suggests that the juror did not remain in the courtroom. Defendant relies solely on the transcript portion above and has not submitted a supplemental narrative to provide context for the alleged error. Review of this matter would require speculation as to the length of time the juror was in the courtroom and information he or she might have overheard.
 

 There is a "longstanding rule [ ] that there is a presumption in favor of regularity and correctness in proceedings in the trial court, with the burden on the appellant to show error."
 
 L. Harvey & Son Co. v. Jarman
 
 ,
 
 76 N.C. App. 191
 
 , 195-96,
 
 333 S.E.2d 47
 
 , 50 (1985). When "the appellant presents evidence to rebut such a presumption, [we] will not turn a deaf ear to that evidence."
 
 Coppley v. Coppley
 
 ,
 
 128 N.C. App. 658
 
 , 663,
 
 496 S.E.2d 611
 
 , 616 (1998). Defendant has not produced any evidence overcoming that presumption. The transcript indicates only that the courtroom clerk noticed that a juror was entering the courtroom during the charge conference, that the trial court took
 
 *192
 
 notice, and that the trial court then instructed counsel to proceed with the charge conference. Defendant has failed to show that the juror remained in the courtroom or that the trial court erred with respect to that juror.
 

 The short dialogue during the charge conference is insufficient for us to review this issue. Because Defendant "has made no attempt to reconstruct the evidence,"
 
 In re Bradshaw
 
 ,
 
 160 N.C. App. 677
 
 , 681,
 
 587 S.E.2d 83
 
 , 86 (2003), and has not demonstrated that he did not have the means to compile such a narration,
 
 In re Clark
 
 ,
 
 159 N.C. App. 75
 
 , 80,
 
 582 S.E.2d 657
 
 , 660 (2003), we dismiss this issue.
 

 II. Prosecutor's Closing Argument
 

 Next, Defendant argues that the trial court should have intervened
 
 ex mero motu
 
 during closing arguments because the prosecutor's statements were grossly improper. Although some of the prosecutor's
 
 *740
 
 statements were improper, we conclude they were not so improper as to deprive Defendant of a fundamentally fair trial.
 

 North Carolina General Statute § 15A-1230(a) provides:
 

 During a closing argument to the jury an attorney may not become abusive, inject his personal experiences, express his personal belief as to the truth or falsity of the evidence or as to the guilt or innocence of the defendant, or make arguments on the basis of matters outside the record except for matters concerning which the court may take judicial notice.
 

 N.C. Gen. Stat. § 15A-1230(a) (2015). The standard of review for alleged improper closing arguments absent timely objection "is whether the remarks were so grossly improper that the trial court committed reversible error by failing to intervene
 
 ex mero motu
 
 ."
 
 State v. Jones
 
 ,
 
 355 N.C. 117
 
 , 133,
 
 558 S.E.2d 97
 
 , 107 (2002). Our review employs a two-step test: "(1) whether the argument was improper; and, if so, (2) whether the argument was so grossly improper as to impede the defendant's right to a fair trial."
 
 State v. Huey
 
 ,
 
 370 N.C. 174
 
 , 179,
 
 804 S.E.2d 464
 
 , 469 (2017). The burden is on the appellant to show a "reasonable possibility that, had the error[s] in question not been committed, a different result would have been reached at trial."
 

 Id.
 

 at 185
 
 ,
 
 804 S.E.2d at 473
 
 (quoting N.C. Gen. Stat. § 15A-1443(a) (2015) ). When determining "whether the prosecutor's remarks are grossly improper, the remarks must be viewed in context and in light of the overall factual circumstances to which they refer."
 
 State v. Alston
 
 ,
 
 341 N.C. 198
 
 , 239,
 
 461 S.E.2d 687
 
 , 709 (1995).
 

 A. Name-Calling
 

 Defendant argues that the trial court should have intervened when the prosecutor referred to Defendant as a "fool." The prosecutor, after reminding jurors that Ricky had been prosecuted and convicted for killing Anthony, argued as follows: "But one of the problems we've got is this, and you all know it, is these fools on the streets with guns. One of the fools was on the street that night. We've got one fool left. I'm asking you, are you going to handle this unfinished business for me?"
 

 Because defense counsel did not object at trial, Defendant cannot obtain relief unless he demonstrates that the prosecutor's words were improper
 
 and
 
 "extreme and calculated to prejudice the jury."
 
 State v. Thompson
 
 ,
 
 188 N.C. App. 102
 
 , 110,
 
 654 S.E.2d 814
 
 , 820 (2008). Considering the context of the argument, we conclude that the prosecutor's use of the term "fool" was not improper.
 

 *741
 
 In
 
 State v. Nance
 
 ,
 
 157 N.C. App. 434
 
 , 442-43,
 
 579 S.E.2d 456
 
 , 461-62 (2003), we held that it was improper for the prosecutor to call the defendant a "liar." In
 
 State v. Hamlet
 
 ,
 
 312 N.C. 162
 
 , 173,
 
 321 S.E.2d 837
 
 , 845 (1984), our Supreme Court held that it was improper for the prosecutor to call the defendant an "animal" and his neighborhood a "jungle." In each case, the defendant failed to prove that the prosecutors' statements were prejudicial.
 
 Nance
 
 ,
 
 157 N.C. App. at 442-43
 
 ,
 
 579 S.E.2d at
 
 462 ;
 
 Hamlet
 
 ,
 
 312 N.C. at 173
 
 ,
 
 321 S.E.2d at 845
 
 .
 

 In
 
 State v. Jones
 
 ,
 
 355 N.C. 117
 
 , 133-34,
 
 558 S.E.2d 97
 
 , 107-08 (2002), our Supreme Court reversed the defendant's conviction and death sentence and ordered a new trial because a prosecutor repeatedly called the defendant
 
 *193
 
 a "quitter," "loser," and "lower than the dirt on a snake's belly." The argument was so grossly improper, the Supreme Court held, that the trial court deprived the defendant of a fair trial by not intervening, even in the absence of an objection by defense counsel.
 

 Id.
 

 at 134
 
 ,
 
 558 S.E.2d at 108
 
 . The Court reasoned that the argument "improperly [led] the jury to base its decision not on the evidence relating to the issues submitted, but on misleading characterizations, crafted by counsel, that are intended to undermine reason in favor of visceral appeal."
 

 Id.
 

 at 134
 
 ,
 
 558 S.E.2d at 108
 
 .
 

 Here, unlike in
 
 Jones
 
 , the prosecutor's remarks related to the gun fight that had occurred and did not single out Defendant as a "fool," but compared him to other "fools" who behave recklessly with firearms. The prosecutor did not make repeated ad hominem attacks on Defendant like the prosecutor in
 
 Jones
 
 .
 

 Reviewing the closing argument as a whole, the prosecutor's reference to Defendant as a "fool" was not "calculated to lead the jury astray," but was simply a fair commentary based upon the evidence.
 

 Id.
 

 at 133
 
 ,
 
 558 S.E.2d at 108
 
 . It was not improper for the prosecutor to declare Defendant a "fool" based on evidence that he intervened in an argument between two other people, pointed a loaded firearm at Ricky, discharged the firearm, and enlisted help to hide the firearm, all while being a convicted felon. In contrast to the terms used in
 
 Nance,
 

 Hamlet
 
 , and
 
 Jones
 
 , while calling someone a "fool" is not a compliment, it was not abusive or otherwise improper in the context of the evidence presented in this case. Though one might disagree with the prosecutor's phrasing, it does not render his argument improper.
 

 B. Personal Belief of the Evidence
 

 Defendant next argues that the trial court should have intervened because the prosecutor expressed his belief as to the veracity of the
 
 *742
 
 witnesses. Defendant points to the following italicized portions of the State's closing argument:
 

 First off, he tried to suggest to you that these people that the State presented to you are not telling the truth. Ask yourself what reason there might be for that. You watched them all testify. This person is like family to them, this Defendant.
 
 What reason would they have to falsely come in here, falsely come in here, and say that he committed this offense
 
 . Was any of that suggested to you while they were being cross-examined? I didn't hear it.
 

 ....
 

 The other reason that I'm telling you that these witnesses are telling the truth about
 
 it is think about the one thing that Ricky Jones and Robert Earl Jones mentioned about the gun. The two of them said one distinguishing characteristic about is that it had a long clip in it. Remember them saying that? Well, when this clip is in this gun you can see right here it will extend from that gun while it's loaded. It will be obvious even while you're holding it like you're going to fire it that it has a long clip in it.... Now, at the time Ricky Jones said that and Robert Earl Jones said that to-to law enforcement about it, they couldn't possibly have known that that very gun was going to [be] pulled out of JoJo's house. So, how did they know that gun had a long clip in it unless they really saw the Defendant with it?
 
 They're telling the truth about it, because they saw it happen and because the Defendant frankly did it. Period, the end
 
 .
 

 (emphasis added). Looking at the statements in context and through the totality of the circumstances, the prosecutor's statements, while improper, were not grossly improper and do not merit reversal of Defendant's conviction.
 

 Prosecutors cannot personally vouch for their witnesses, but can "argue that the State's witnesses are credible."
 
 State v. Augustine
 
 ,
 
 359 N.C. 709
 
 , 725,
 
 616 S.E.2d 515
 
 , 528 (2005). The current factual background is akin to facts reviewed by our Supreme Court in
 
 State v. Wiley
 
 ,
 
 355 N.C. 592
 
 ,
 
 565 S.E.2d 22
 
 (2002) and
 
 State v. Wilkerson
 
 ,
 
 363 N.C. 382
 
 ,
 
 683 S.E.2d 174
 
 (2009). In
 
 Wiley
 
 , the defendant argued that, because the prosecutor's case leaned heavily on witness testimony, his comments regarding the witnesses' truthfulness were grossly improper.
 

 *743
 

 *194
 

 Wiley
 
 , 355 N.C. at 622,
 
 565 S.E.2d at 43
 
 . The Supreme Court held the comments were not improper because, rather than expressing his personal opinion, the prosecutor was merely "giving the jury reasons to believe the state's witnesses who had given prior inconsistent statements and were previously unwilling to cooperate with investigators."
 
 Id.
 
 at 622,
 
 565 S.E.2d at 43
 
 .
 

 In
 
 Wilkerson
 
 , the prosecutor impermissibly told the jury that a witness was telling the truth.
 
 Wilkerson
 
 ,
 
 363 N.C. at 425-26
 
 ,
 
 683 S.E.2d at 200
 
 . The Supreme Court held that the comment violated N.C. Gen. Stat. § 5A-1230(a), but that it was not grossly improper.
 
 Id.
 
 at 425,
 
 683 S.E.2d at 200
 
 .
 

 In this case, the prosecutor was attempting to bolster the credibility of the witnesses by showing the relationship they had with Defendant and how they tended to corroborate with one another. The prosecutor pointed out that the witnesses knew Defendant "to the level of family," which would make their testimony all the more credible. The prosecutor also noted that Ricky and Robert both testified as to the extended clip attached to the gun that Defendant possessed. Their testimony, the prosecutor argued, was all the more credible because Ricky and Robert did not know that the same gun was given to Ronaldo and hidden under JoJo's mattress. The prosecutor went too far when he asserted that the witnesses were "telling the truth about it, because they saw it happen and because the Defendant frankly did it." However, while the prosecutor's statements were improper because they expressly vouched for the truthfulness of the witnesses, they were not so grossly improper to warrant a new trial.
 

 C. Personal Belief of Defendant's Guilt
 

 Defendant contends that the court failed to intervene when the prosecutor proclaimed that Defendant was "absolutely guilty of the crime he's charged with" and that "[t]here's just no question about it." The prosecutor's statements were improper, but we conclude that they did not deprive Defendant of his right to a fair trial.
 

 In
 
 State v. Waring
 
 ,
 
 364 N.C. 443
 
 , 500,
 
 701 S.E.2d 615
 
 , 651 (2010), the defendant argued that the prosecutor injected his own personal opinion as to the defendant's guilt by stating "I believe the evidence is overwhelming that the defendant is guilty of first-degree felony murder." Our Supreme Court rejected that argument and held that it is not grossly improper to discuss a defendant's culpability when the prosecutor's argument relates "the strength of the evidence to the theories under which [the] defendant [is] prosecuted" and in verdict sheets presented to the jury.
 
 Id.
 
 at 500,
 
 701 S.E.2d at 651
 
 .
 

 *744
 
 In this case, the prosecutor declared Defendant guilty, but only after reviewing the elements of felony gun possession and the evidence presented by the State. The prosecutor focused on the issues that were in question and what defense counsel would likely argue. The prosecutor's statement that Defendant was guilty followed his assessment of the strength of the State's witnesses, and did not suggest perceived personal knowledge. Thus, as stated in
 
 Waring
 
 , though the prosecutor's statements were "obviously improper," they did not rise to the level that required the trial court to intervene independently.
 
 Id.
 
 at 500,
 
 701 S.E.2d at 651
 
 .
 

 D. Matters Unsupported by the Evidence
 

 Defendant posits that the prosecutor made arguments on matters outside the record and unsupported by the evidence when he remarked that Defendant told Ronaldo to "man, get rid of this"-this being the gun. The prosecutor's statement in this regard was not improper.
 

 Prosecutors are "given wide latitude in the scope of their argument,"
 
 State v. Goss
 
 ,
 
 361 N.C. 610
 
 , 626,
 
 651 S.E.2d 867
 
 , 877 (2007) (citation omitted), and may argue any "inference[ ] that reasonably can be drawn from the evidence presented."
 
 State v. Anderson
 
 ,
 
 175 N.C. App 444
 
 , 453,
 
 624 S.E.2d 393
 
 , 400 (2006). So long as the argument is "consistent with the record and does not travel into the fields of conjecture or personal opinion," the argument is not improper.
 
 State v. Madonna
 
 , --- N.C. App. ----, ----,
 
 806 S.E.2d 356
 
 , 362 (2017) (quoting
 
 State v. Small
 
 ,
 
 328 N.C. 175
 
 , 184-85,
 
 400 S.E.2d 413
 
 , 419 (1991) ).
 

 *195
 
 Ronaldo testified that Defendant gave him the gun and Detective Hudgins testified that Ronaldo told police that Defendant gave him the gun. Though Ronaldo did not say that Defendant expressly stated "man, get rid of this," the prosecutor's assertion fairly summarized the evidence and argued a reasonable inference arising from the testimony.
 

 E. Accountability to Community
 

 Defendant's last argument is that the prosecutor impermissibly advocated that the jury's accountability to its community should compel a guilty verdict. Defendant takes issue with the following italicized portion of the State's closing argument:
 

 What I really represent is people.... These people are-some of them are known to you, your friends, your neighbors, your employers, co-workers, that kind of thing
 
 .... The reason I represent them is because
 
 they have a right
 

 *745
 

 to know that when things like this happen, that the right thing happens in this courtroom
 
 ....
 

 This kind of behavior that the Defendant exhibited on this particular night is dangerous....
 
 It causes people to have negative conclusions about this place in which we all live
 
 . It could possibly potentially hurt or kill someone....
 

 But he did do it himself and it is important for that reason to
 
 my clients if you will, which is the State of North
 

 Carolina
 
 for what they are, living, breathing people. The people who live here....
 
 This case matters to them
 
 . Therefore, I hope it matters to you....
 

 I'm asking you, are you going to handle this unfinished business for me?
 

 (emphasis added). The above statements were not improper.
 

 A prosecutor can argue that a jury is the "voice and conscience of the community,"
 
 State v. Brown
 
 ,
 
 320 N.C. 179
 
 , 204,
 
 358 S.E.2d 1
 
 , 18 (1987), and "may also ask the jury to 'send a message' to the community regarding justice."
 
 State v. Barden
 
 ,
 
 356 N.C. 316
 
 , 367,
 
 572 S.E.2d 108
 
 , 140 (2002). A prosecutor must not ask or embolden the jury to "lend an ear to the community," such that the jury is speaking for the community or acting for the community's desires.
 
 Id.
 
 at 367,
 
 572 S.E.2d at 140
 
 .
 

 The statements here were standard opinions and assertions of fact that did not suggest the jury would be held accountable to the community. In
 
 State v. Rogers
 
 ,
 
 323 N.C. 658
 
 , 662-63,
 
 374 S.E.2d 852
 
 , 855-56 (1989), our Supreme Court held there was no error in the prosecutor's argument that the community deserved to be safe, drug-free, and that young people should be warned about drug abuse. The Court concluded that such public policy opinions are widely held and are not improper.
 
 Id.
 
 at 663, 374 S.E.2d at 856. Here, the prosecutor stated he represented North Carolina and that the people of the State were essentially his clients. Defendant's alleged conduct adversely affected the community at large. The prosecutor argued that people in the community deserve to have justice occur in the courtroom. He argued that he hoped this case mattered enough to the jury to render a just conclusion. These remarks by the prosecutor were proper because they involved commonly held beliefs and merely attempted to motivate the jury to come to an appropriate conclusion, rather than to achieve a result based on the community's demands.
 

 *746
 
 We are equally unpersuaded that the prosecutor's statement regarding "unfinished business" unfairly pressured the jury to curb a societal ill. In
 
 Barden
 
 , the prosecutor argued-over defense counsel's objection-that the jury would be doing a "disservice" to the community if the defendant was not sentenced to death.
 
 Barden
 
 ,
 
 356 N.C. at 367-68
 
 ,
 
 572 S.E.2d at 140-41
 
 . Our Supreme Court concluded that "the prosecutor did not contend that the community demanded defendant's execution," but instead asked the jury not to do a disservice to the community and concluded that the trial court did not abuse its discretion.
 
 Id.
 
 at 368,
 
 572 S.E.2d at 141
 
 .
 

 The same holds true in this case. The prosecutor did not urge that society or the community wanted Defendant punished, but requested, based on the evidence, the jury make an appropriate decision. Even assuming that the statement was improper, it was not grossly improper. Unlike in
 
 Barden
 
 , defense counsel in this case did not object at
 
 *196
 
 trial. Defendant cannot show a reasonable possibility that the result would have been different had the prosecutor not made the statement.
 

 Conclusion
 

 While we reject Defendant's arguments, we do not condone remarks by prosecutors that exceed statutory and ethical limitations. Derogatory comments, epithets, stating personal beliefs, or remarks regarding a witness's truthfulness reflect poorly on the propriety of prosecutors and on the criminal justice system as a whole. Prosecutors are given a wide berth of discretion to perform an important role for the State, and it is unfortunate that universal compliance with "seemingly simple requirements" are hindered by "some attorneys intentionally 'push[ing] the envelope' with their jury arguments."
 
 Jones
 
 , 355 N.C. at 127,
 
 558 S.E.2d at 104
 
 . But, because Defendant has failed to overcome the high burden to prove that these missteps violated his due process rights, he is not entitled to relief.
 

 NO ERROR.
 

 Judges TYSON and BERGER concur.