STATE OF NORTH CAROLINA v. PHILLIP NANCE

No. COA02-750

(Filed 6 May 2003)

**1. Evidence— prior assault by homicide victim—exclusion not prejudicial**

The exclusion of evidence was not prejudicial error in a homicide prosecution where defendant claimed that the victim (Smith) was shot in a struggle for a gun during an argument, and the witness (Welch) would have testified that he was shot in a struggle over a gun when he lived with the victim. The same evidence was admitted elsewhere, and this testimony would not have been favorable for defendant because Welch would have admitted that he was the aggressor in his argument with Smith. Moreover, the trial court did not abuse its discretion in determining that alleged prior inconsistent testimony by Welch was questionable and that Welch's testimony would tend to confuse the issues and the jury.

**2. Criminal Law— prosecutor's argument—homicide victim's violent nature—excluded evidence**

A prosecutor did not improperly refer to excluded evidence in a homicide prosecution where the prosecutor did not single out the excluded testimony but referred generally to the lack of evidence of the victim's alleged violent nature. Moreover, the court sustained defendant's objection.

**3. Criminal Law— prosecutor's argument—defendant's interview with investigators—partially played at trial**

The prosecutor's argument in a homicide prosecution did not deny defendant due process where the prosecutor argued that the jury had not heard the entire recording of defendant's interview with investigators. The jurors had been informed that portions of the tape were not admissible, and a curative instruction was given.

**4. Criminal Law— prosecutor's argument—defendant's manhood**

A prosecutor's argument that questioned defendant's manhood and referred to defendant hitting his girlfriend and molesting her daughter was not improper where the court sustained defendant's objection and gave a curative instruction.

STATE v. NANCE

[157 N.C. App. 434 (2003)]

**5. Criminal Law— prosecutor's argument—characterization of defense**

A prosecutor's argument that defense counsel was trying to cloud minds like "The Shadow" was not so prejudicial as to require a new trial.

**6. Criminal Law— prosecutor's argument—defendant's statement misread**

A prosecutor's alleged misreading of defendant's statement was not error where the trial court sustained defendant's objection and required the prosecutor to read the entire statement in context.

**7. Criminal Law— prosecutor's argument—reasonable inference from facts**

A prosecutor's argument that a homicide victim told her daughter to run because she thought defendant would hurt the child was supported by the evidence. The daughter testified that her mother had told her to leave the house, and the State may argue reasonable inferences from the facts.

**8. Criminal Law— prosecutor's argument—characterization of defendant—not grossly improper**

There was no prejudicial error in a homicide prosecution where the prosecutor called defendant a woman beater, a liar, and a murderer in his closing argument. Calling defendant a liar was quite improper, but not so prejudicial as to be a denial of due process. Calling him a murderer or woman beater did not require a new trial, given the evidence and the charge.

**9. Criminal Law— prosecutor's argument—theatrics—not reflected in record**

There was no error in a homicide prosecution where defendant contended that the prosecutor engaged in improper theatrics during closing arguments, but the record did not reflect the physical conduct about which defendant complained.

**10. Criminal Law— instructions—missing evidence—no bad faith—no special instruction**

The denial of a homicide defendant's request for a special instruction on an investigator's missing notes was not error. There was an insufficient showing of bad faith by officers, and

STATE v. NANCE

[157 N.C. App. 434 (2003)]

defendant did not show that the missing notes and report would have contained any exculpatory evidence.

Appeal by defendant from judgment entered 19 April 2001 by Judge W. Robert Bell in Mecklenburg County Superior Court. Heard in the Court of Appeals 25 March 2003.

*Attorney General Roy A. Cooper, III, by Assistant Attorney General Dennis P. Myers, for the State.*

*Ferguson, Stein, Chambers, Wallas, Adkins, Gresham & Sumter, P.A., by Henderson Hill, Karl Adkins, and C. Margaret Errington, for defendant-appellant.*

MARTIN, Judge.

Defendant was indicted for the murder of Sharon Renee Smith and was tried capitally. He appeals from a judgment entered upon his conviction of voluntary manslaughter.

The State's evidence tended to show that defendant and Sharon Renee Smith were boyfriend and girlfriend and resided together. Smith's thirteen-year-old daughter, Mahogany Welch, who lived in the house with Smith and defendant, testified that she was awakened around 11:30 a.m. on 17 March 1998 when defendant got into bed with her and began fondling her in a sexual manner. When Welch reached for something with which to hit defendant, he left.

Welch did not see defendant again until the afternoon when he and Smith arrived home with groceries at approximately 4:00 p.m. Welch told her mother what defendant had done that morning. Welch testified that Smith began to cry, and retrieved some black trash bags from the closet. Smith then went to the bedroom and began to pack defendant's clothes in the trash bags. Welch overheard defendant and Smith arguing in the bedroom and saw defendant choking Smith with his left hand while he hit her on the face and head with his right hand. Smith called out to Welch to "go call [her] Uncle Fred." Welch testified that as she stepped out the front door to do so, she heard a single gunshot. Welch ran back into the house and observed defendant coming out of the bedroom with a gun in his right hand. Welch then left the house.

Defendant contacted 911, and authorities and medics arrived on the scene shortly thereafter. Defendant directed authorities to the bedroom where Smith's body was partially propped against the door.

Smith was pronounced dead at the scene. The medical examiner testified Smith was shot at close range from a gun that was directly in front of her and pointed slightly downward and died as a result of a gunshot wound to the chest. Defendant told one investigator on the scene that he had thrown the gun into a field; he told another investigator that he had thrown the gun into some woods. A bloody handgun was recovered from under a chair in the living room of the house.

In an interview with investigators following the incident, defendant stated he had inadvertently pulled the trigger of the gun, shooting Smith, because Smith was pulling his arm in an attempt to reach the gun. A portion of defendant's interview was tape recorded, and the State introduced portions of the recording into evidence. Joyce Smith, Renee Smith's sister-in-law, testified that defendant had physically abused Smith previously, and that Smith feared defendant.

Defendant testified on his own behalf, maintaining he had a good relationship with Smith, and that he had never touched Welch inappropriately. Defendant corroborated Welch's testimony that Smith confronted him with Welch's accusations and that he had denied them. Defendant testified Smith became upset and began to pack his clothes into plastic trash bags. He testified that while Smith was in the bedroom packing defendant's clothes, she reached under the mattress where defendant kept his gun. Defendant grabbed the gun first and placed it in the waistband of his pants. He began to pack his own belongings. Defendant testified that as he bent down to pick up some clothes, Smith came at him, reaching for the gun. Defendant pushed Smith onto the bed, pinned her down, and instructed her to calm down. After a few minutes, defendant let Smith get off the bed. Defendant testified Smith came at him again in an attempt to get the gun. Defendant removed the gun from his pants to prevent it from discharging. As the two struggled for possession of the gun, it discharged, shooting Smith. Defendant testified he saw Welch as he was leaving the bedroom and instructed her to get help. He testified that he then placed the gun under a chair cushion in the living room and left the house to get help.

Defendant also presented testimony from his mother that Smith had told her she had shot the father of her children, Richard Welch, in the leg during an argument, had tried to brand another boyfriend with a hot fireplace poker, and had physically beaten another boyfriend when she discovered him in bed with another woman.

STATE v. NANCE

[157 N.C. App. 434 (2003)]

In his brief, defendant addresses three of the seven assignments of error contained in the record on appeal. The remaining four assignments of error are deemed abandoned. *See* N.C. R. App. P. 28(a). He raises three issues, pertaining to (1) the exclusion of Richard Welch's testimony concerning a prior shooting; (2) the prosecutor's conduct during closing arguments; and (3) the trial court's refusal to instruct the jury on missing evidence. We find no error.

### I.

**[1]** Defendant first maintains the trial court erred in excluding testimony by Richard Welch concerning the incident in which Smith shot him. Defense counsel sought to admit the evidence under G.S. § 8C-1, Rule 404(b) to show Smith's intent, propensity for violence, and that she was the aggressor in the affray with defendant. The State objected to admission of the testimony. On *voir dire*, Welch testified that while he lived with Smith, the two had an argument over his involvement with another woman and that he began to beat Smith during the argument. He testified that Smith retrieved a gun and told him not to hit her anymore. Welch testified that Smith then retreated to a bedroom where he followed her and struggled with her in an attempt to take the gun away from her. During the struggle, the gun discharged, shooting him in the leg. Richard Welch acknowledged the shooting was his fault.

The trial court concluded the testimony was not relevant to Smith's aggressiveness or propensity for violence because Richard Welch's testimony clearly established that he had been the aggressor in the incident and that Smith had acted only in self-defense. The trial court noted that to the extent the testimony did show any propensity for violence, defendant had already been permitted to testify he was aware Smith had shot Richard Welch during an argument.

To be admissible under Rule 404(b), evidence of a prior crime or incident must be sufficiently similar to the incident at issue. *State v. Boyd*, 321 N.C. 574, 364 S.E.2d 118 (1988). Even if evidence is sufficiently similar to be admissible under Rule 404(b), it is nevertheless subject to the relevancy requirements and balancing test of Rule 403. *State v. Thibodeaux*, 352 N.C. 570, 532 S.E.2d 797 (2000) (citation omitted), *cert. denied*, 531 U.S. 1155, 148 L. Ed. 2d 976 (2001). The determination of relevancy and ultimate determination of admissibility are both within the trial court's sound discretion. *Id.*

The trial court did not abuse its discretion in prohibiting Welch's testimony, given that Welch's *voir dire* testimony clearly established

that he had been the aggressor in the incident and that Smith had acted in self-defense. Defendant argues that if Welch had been permitted to testify, his testimony could have been impeached by evidence of prior statements in which Welch had apparently stated that Smith was the aggressor in the incident. However, the trial court determined, following a *voir dire* hearing on Welch's prior inconsistent statements, that the trustworthiness of those statements was questionable, and that Welch's prior statements had not been given under oath, as his *voir dire* testimony had been. The trial court concluded the interests of justice would not be served by admission of Welch's testimony, and in fact, would tend to confuse the issues and the jury. We discern no manifest abuse of discretion in this determination.

In any event, defendant has not carried his burden of establishing that the exclusion of Welch's testimony prejudiced the result of his trial. Evidence was admitted through the testimony of both defendant and his mother that Smith had shot Welch, and Welch's testimony, if admitted, and regardless of any impeachment evidence, would not have been favorable to defendant in light of Welch's testimony that he was the aggressor. *See* N.C. Gen. Stat. § 15A-1443(a) (2003) (defendant must carry burden of proving outcome of trial would have been different but for trial court's alleged error). This assignment of error is therefore overruled.

II.

In his second argument, defendant asserts he was deprived of a fair trial by the prosecutor's closing argument. He contends the prosecutor improperly referred to matters outside the record, appealed to the jury's passion and prejudice, inserted his personal opinion into the argument, and engaged in name-calling and other "improper theatrics."

In *State v. Jones*, 355 N.C. 117, 558 S.E.2d 97 (2002), our Supreme Court recognized the need to "strike a balance between giving appropriate latitude to attorneys to argue heated cases and the need to enforce the proper boundaries of closing argument and maintain professionalism." *Id.* at 135, 558 S.E.2d at 108. In assessing those boundaries, the Supreme Court listed four requirements for a closing argument: that it "(1) be devoid of counsel's personal opinion; (2) avoid[s] name-calling and/or references to matters beyond the record; (3) be premised on logical deductions, not on appeals to passion or prejudice; and (4) be constructed from fair inferences drawn only from evi-

dence properly admitted at trial." *Id.* Such requirements must be viewed in light of the well-established principle that prosecutors are afforded wide latitude in presenting closing arguments to the jury. *See State v. Prevatte*, 356 N.C. 178, 570 S.E.2d 440 (2002). However, as the *Jones* court noted, " 'wide latitude' has its limits." *Jones*, 355 N.C. at 129, 558 S.E.2d at 105.

In the present case, defense counsel interposed a timely objection to each of the prosecutor's actions of which he now complains; thus, we review the court's rulings for abuse of discretion. *See id.* at 131, 558 S.E.2d at 106. A prosecutor's improper remark during closing arguments does not justify a new trial unless it is so grave that it prejudiced the result of the trial. *State v. Westbrooks*, 345 N.C. 43, 478 S.E.2d 483 (1996). Such prejudice is established only where the defendant can show " 'the prosecutor's comments . . . "so infected the trial with unfairness as to make the resulting conviction a denial of due process." ' " *State v. Morston*, 336 N.C. 381, 405, 445 S.E.2d 1, 14 (1994) (citations omitted).

### A. Matters outside the record

[2] Defendant first argues the prosecutor improperly referred to matters outside the record by drawing the jury's attention to defendant's lack of objective evidence as to Smith's violent nature; he argues the prosecutor was referring to the absence of Richard Welch's testimony, which the trial court had ruled inadmissible. However, a fair reading of the transcript reveals the prosecutor did not single out Welch's testimony, but simply spoke generally about the lack of objective evidence as to Smith's allegedly violent nature. Our Supreme Court has rejected an identical argument based on similar facts. *See State v. Call*, 349 N.C. 382, 421-22, 508 S.E.2d 496, 520 (1998) (noting "[t]his Court has repeatedly held that a prosecutor may properly comment on a defendant's failure to produce witnesses or evidence that contradicts or refutes evidence presented by the State."). Moreover, the trial court promptly sustained defendant's objection.

[3] Defendant also argues the prosecutor's argument that the jury had not heard the entire recording of defendant's taped interview with investigators unfairly encouraged the jury to speculate about the contents of the omitted portion of the tape. However, the jury had already been informed by the trial court at defendant's request that certain parts of the tape would not be admitted into evidence. In addition, the trial court instructed the jurors that they were not to speculate about the contents of the omitted portions of

the tape, and all jurors affirmatively indicated they would comply with the court's instruction. Therefore, the prosecutor's argument could not have been so extreme and prejudicial as to amount to a denial of due process.

## B. Appeals to passion or prejudice

[4] Defendant also contends the prosecutor, in three instances during the argument, improperly attempted to appeal to the jury's passion and prejudice. The prosecutor asked the jury, "[w]hat part of being a man involves hitting a woman . . . and molesting a 13 year old?" The trial court sustained defendant's objection, instructed the jury not to consider the statements, reminded the jury that evidence of alleged molestation had been offered solely to establish the circumstances surrounding the altercation between defendant and Smith, polled the jurors as to whether they understood that fact, and noted for the record that all jurors understood. A jury is presumed to follow a court's curative instructions. *State v. Barden*, 356 N.C. 316, 572 S.E.2d 108 (2002).

[5] Defendant also argues the prosecutor improperly attacked the defense's theory and defense counsel by referring to "The Shadow," a fictional crime fighter who "had the power to cloud men's minds," by stating "that's what the defense is attempting to do in this case." However, after reviewing the argument, we do not believe it so prejudicial as to require a new trial. *See, e.g.*, *State v. Grooms*, 353 N.C. 50, 83, 540 S.E.2d 713, 733 (2000) (prosecutor's statements that defense had taken focus away from defendant and created "as much smoke and fog" as possible not sufficiently prejudicial), *cert denied*, 534 U.S. 838, 151 L. Ed. 2d 54 (2001); *State v. Harris*, 338 N.C. 211, 230, 449 S.E.2d 462, 472 (1994) (prosecutor's reference to defense strategy as "ingenuity of counsel" not sufficiently prejudicial).

[6] Defendant further argues the prosecutor appealed to the jury's passion and prejudice by purposefully misreading defendant's statement to investigators to insinuate that defendant had desired to hurt Mahogany Welch. Even though the prosecutor did not initially read defendant's statement in its entirety, the trial court sustained defendant's objection and instructed the prosecutor to read the entire statement in context, curing any prejudice.

## C. Statements based on opinion

[7] Defendant also challenges the prosecutor's statement to the jury that Smith had instructed Mahogany Welch to run from the house dur-

ing the argument with defendant because she thought defendant would hurt Mahogany. Defendant argues the statement amounted to nothing more that the prosecutor's personal opinion because there was no evidence to support the prosecutor's statement.

In closing arguments, the State may argue any fact in evidence and also any reasonable inferences to be drawn from the facts. *State v. Atkins*, 349 N.C. 62, 505 S.E.2d 97 (1998), *cert. denied*, 526 U.S. 1147, 143 L. Ed. 2d 1036 (1999). Mahogany's testimony established that Smith did instruct her to leave the house to call her uncle while Smith and defendant were arguing. We believe a reasonable inference could be drawn that Smith instructed Welch to leave the house and call her uncle not only for the purpose of bringing help, but because Smith did not want Welch in the house during a violent conflict for fear of her safety.

## D. Name-calling

[8] The prosecutor referred to defendant as "a woman beater, a liar, and a murderer." The trial court promptly sustained defendant's objection. In *Harris*, 338 N.C. at 229, 449 S.E.2d at 471, the Supreme Court rejected the defendant's contention that the prosecutor improperly characterized him as a "cold-blooded murderer" during closing argument, as defendant was, in fact, on trial for first degree murder, and the evidence showed the murder was calculated and unprovoked. Likewise, in this case, given that defendant was charged with Smith's murder and the State's evidence tended to show he had shot and killed Smith during an argument and had physically abused her on other occasions, it was not so grossly improper for the prosecutor to refer to defendant as a murderer or a woman beater as to amount to a denial of due process or require a new trial. *See id.* (not improper for prosecutor to refer to defendant as a "doper" in light of evidence of defendant's history of drug abuse; term was accurate description of defendant based on the evidence).

The prosecutor's characterization of defendant as a "liar," however, was quite improper, *see, e.g.*, *State v. Scott*, 343 N.C. 313, 471 S.E.2d 605 (1996), and we reiterate the concerns recently expressed by our Supreme Court as to such improprieties:

[W]e are disturbed that some counsel have failed to heed our repeated warnings that such arguments are improper, even if not always grossly so. One measure of the professionalism that we expect from litigants in North Carolina courts is the avoidance of

all known improprieties. Our prior holdings, where the conviction was not reversed on the basis of a prosecutor's improper argument only because of the demanding standard of review, should not be construed as an invitation to trial counsel to try the same thing again. We admonish counsel to refrain from [engaging in such improprieties].

*State v. Rogers*, 355 N.C. 420, 464, 562 S.E.2d 859, 886 (2002) (citations omitted). The Supreme Court likewise expressed such concerns in *Jones*, observing that if counsel were to comply with the seemingly simple requirements for professionalism in closing arguments, "then the issue of alleging improper arguments on appeal would prove an exception instead of the rule. Regrettably, such has not been the case; in fact, it appears to this Court that some attorneys intentionally 'push the envelope' with their jury arguments in the belief that there will be no consequences for doing so." *Jones*, 355 N.C. at 127, 558 S.E.2d at 104; *see also, State v. Haselden*, 357 N.C. 1, ——, 577 S.E.2d 594, —— (2003) (Edmunds, J., dissenting) (expressing disapproval of court's failure to enforce standards for closing arguments more strictly, stating "[a]lthough we have noted that professionalism includes the avoidance by practitioners of all known improprieties . . . it is difficult to fault an advocate who realizes that he or she can land a telling, possibly decisive, blow at the modest cost of a verbal hand slapping from this Court.").

Given the evidence in the present case, however, defendant has not carried the burden of establishing that the impropriety resulted in prejudice such that his conviction was a denial of due process. *See Scott*, 343 N.C. at 344, 471 S.E.2d at 623 (prosecutor's repeated comments that defendant lied not grossly improper); *State v. Sexton*, 336 N.C. 321, 363, 444 S.E.2d 879, 903 (characterization of defendant as a liar improper, but defendant unable to show requisite prejudice), *cert. denied*, 513 U.S. 1006, 130 L. Ed. 2d 429 (1994). Even so, we re-emphasize to counsel the professional standards for closing arguments set forth in G.S. § 15A-1230(a), and Rule 12 of the General Rules of Practice for the Superior and District Courts, governing courtroom decorum and providing, *inter alia*, that counsel shall at all times "conduct themselves with dignity and propriety." *See* Gen. R. Pract. Super. and Dist. Ct. 12.

**[9]** Finally, defendant argues the prosecutor engaged in "improper theatrics" because he "rushed at the defendant," leaned over the table into defendant's "personal space" and "glared" at defendant while

making the characterizations described above. The prosecutor acknowledged walking in front of defense counsel's table and pointing at defendant but denied leaning over the table or otherwise invading defendant's personal space. The record reflects only the prosecutor's language and the court's sustaining defense counsel's objection, and does not note any physical conduct of which defendant complains. In the absence of any such affirmative showing in the record or any admonishment by the trial court, which was in a better position than this Court to determine whether counsel engaged in any improper physical conduct, we must defer to the sound discretion of the trial court. These assignments of error are overruled.

III.

**[10]** Immediately following the shooting, defendant agreed to speak with Investigator Rice and Sergeant Athey at the police station. Defendant spoke with Rice and Athey for a period of time prior to being recorded. Investigator Rice testified that he took notes during the unrecorded portion of the interview and destroyed those notes after incorporating them into a supplemental report. The supplemental report was unaccounted for at trial. Sergeant Athey did not take notes during the initial portion of the interview, but prepared a report, which was used at trial, covering defendant's entire interview, including the unrecorded portions. Defendant requested that the jury be instructed that because investigators were unable to produce Investigator Rice's notes and supplemental report from the initial unrecorded portion of the interview, the jury could infer the missing evidence would have corroborated defendant's trial testimony. The trial court refused the request and defendant assigns error.

In *State v. Hunt*, 345 N.C. 720, 483 S.E.2d 417 (1997), the Supreme Court noted that destruction of evidence does not amount to the denial of a fair trial unless the defendant can establish (1) the police destroyed the evidence in bad faith; and (2) "the missing evidence possessed an exculpatory value that was apparent before it was lost." *Id.* at 725, 483 S.E.2d at 421.

In this case, defendant based his claim of bad faith solely on the facts that investigators did not tape the interview in its entirety, could not produce Investigator Rice's notes and supplemental report of the unrecorded portions of the interview, and could not explain how the report had been lost. However, defendant had the opportunity to cross-examine both investigators about the unrecorded portions of the interview. Sergeant Athey testified it was not standard procedure

to initially tape record a suspect because it tends to inhibit initial communication, and Investigator Rice testified he destroyed his notes simply because he had incorporated them into the supplemental report. We hold this evidence insufficient to establish that the notes and report were lost or destroyed in bad faith, particularly in light of the availability of Sergeant Athey's report covering the same interview. As in *Hunt*, "[n]othing in the record suggests that any law enforcement officer willfully destroyed the missing evidence." *Id.* at 725, 483 S.E.2d at 420.

Moreover, although defendant argues that any notes and report of the initial untaped portion of the interview would have been critical to the case because it would have shown defendant's state of mind and demeanor directly after the shooting, defendant has failed to show that Investigator Rice's missing notes and report would have contained any exculpatory evidence. Accordingly, the trial court did not err in refusing to grant defendant's request for a special instruction.

No error.

Judges HUDSON and ELMORE concur.