STATE OF NORTH CAROLINA v. JAMES ARTHUR THOMPSON

No. COA07-363

(Filed 15 January 2008)

**1. Drugs— maintaining dwelling for keeping or selling controlled substances—insufficient evidence**

A motion to dismiss a charge of maintaining a building for the keeping or selling of controlled substances should have been granted. There was insufficient evidence of drug use in the apartment, the sale of drugs, or the keeping drugs in the house over time.

STATE v. THOMPSON

[188 N.C. App. 102 (2008)]

**2. Criminal Law— prosecutor's closing argument—improper comments about counsel and witnesses—not prejudicial**

The prosecution's closing argument in a cocaine prosecution contained improper comments regarding witnesses and defense counsel, but was not extreme and calculated to prejudice the jury such that the trial court should have intervened ex mero motu.

**3. Evidence— lab reports—nontestifying witness— admissibility**

There was no error in a cocaine prosecution in the admission of evidence of lab tests performed by a witness who did not testify. An expert may base an opinion on tests performed by others if the tests are of the type reasonably relied upon in the field, the S.B.I. agent who testified was qualified as an expert, and defendant had the opportunity to cross-examine him.

Appeal by defendant from judgment entered 22 September 2006 by Judge Jack W. Jenkins in Wayne County Superior Court. Heard in the Court of Appeals 17 October 2007.

*Attorney General Roy A. Cooper, III, by Assistant Attorney General Amanda P. Little, for the State.*

*Appellate Defender Staples Hughes, by Assistant Appellate Defenders David W. Andrews and Benjamin Dowling-Sendor, for defendant-appellant.*

HUNTER, Judge.

James Arthur Thompson ("defendant") appeals from a judgment of guilty on charges of possession of cocaine and intentionally maintaining a dwelling used for the keeping and/or selling of controlled substances. On the same day, defendant entered a plea admitting his status as a habitual felon. After careful consideration, we reverse the trial court's denial of defendant's motion to dismiss the charge of intentionally maintaining a dwelling used for the keeping and/or selling of controlled substances, and we remand for resentencing based on the conviction of possession of cocaine.

I.

On 23 February 2005, officers of the Wayne County Sheriff's Office and the Goldsboro Police Department acted upon an anonymous tip that a person by the name of "Big Man" was selling heroin out of his residence at 204 Brazil Street. When the officers went to

STATE v. THOMPSON

[188 N.C. App. 102 (2008)]

this address to speak to Big Man, defendant came to the door and permitted the officers to enter upon request. When asked, defendant denied that he went by the name of Big Man or sold heroin, but allowed the officers to search his home. During the search defendant asked one of the officers if he could lie down. The officer agreed but requested that defendant first consent to a search of his person. Defendant acquiesced, then put his hands in his pockets and pulled out $345.00 in cash and a plastic bag containing 2.1 grams of cocaine. Defendant was subsequently placed under arrest. The search of defendant's apartment did not reveal any other drugs. Defendant was subsequently indicted for one count of possession with intent to sell and deliver a controlled substance and one count of keeping and maintaining a dwelling for the use of controlled substances.

At trial, one of the officers present for the search, Sergeant Daniel Peters, testified that while being processed defendant made the comment that he purchased the cocaine to "get women," but during defendant's testimony at trial he denied making the comment. Defendant also testified that at the time he revealed the cocaine in his pocket, defendant told Sergeant Peters that the substance was "fake" because he believed it may have been planted in his pocket the day before by either his estranged wife Nicky, or by a woman named Tish who was visiting the apartment with defendant's nephew, Eric Best. Defendant maintained at trial that he did not sell drugs.

II.

[1] Defendant first argues that the trial court erred by failing to grant his motion to dismiss the charge of intentionally maintaining a dwelling used for the keeping and/or selling of controlled substances. We agree.

A.

N.C. Gen. Stat. § 90-108(a)(7) (2005) states that it is unlawful: "To *knowingly* keep or maintain any . . . dwelling house . . . *which is resorted to* by persons using controlled substances in violation of this Article for the purpose of using such substances, or *which is used for the keeping or selling* of the same in violation of this Article[.]" (Emphasis added.) "A motion to dismiss must be denied if 'there is substantial evidence (1) of each essential element of the offense charged and (2) that [the] defendant is the perpetrator of the offense.' " *State v. Frazier*, 142 N.C. App. 361, 365, 542 S.E.2d 682, 686 (2001) (citation omitted). " 'When ruling on a motion to dismiss, all of the evidence should be considered in the light most favorable to the

State, and the State is entitled to all reasonable inferences which may be drawn from the evidence.' " *Id.* (citation omitted).

A motion to dismiss the charge of maintaining a dwelling for the keeping and/or selling of controlled substances should be denied if there is sufficient evidence for a jury to infer that defendant is guilty under either of the following two statutory alternatives:

> [First,] defendant did (1) knowingly (2) keep or maintain (3) a [dwelling] (4) which is resorted to (5) by persons unlawfully using controlled substances (6) for the purpose of using controlled substances. Under the second statutory alternative, the State must prove that the defendant did (1) knowingly (2) keep or maintain (3) a [dwelling] (4) which is used for the keeping or selling (5) of controlled substances.

*State v. Mitchell*, 336 N.C. 22, 31, 442 S.E.2d 24, 29 (1994); *see* N.C. Gen. Stat. § 90-108(a)(7).

B.

The first statutory alternative requires that the State prove defendant knowingly allowed others to resort to his dwelling to consume controlled substances. However, the only evidence that anyone resorted to defendant's apartment to use drugs was testimony that on 22 February 2005 defendant's nephew brought to defendant's apartment a woman whom defendant knew to be a drug user. No evidence was presented that this woman used drugs at defendant's apartment, whether that evening or at any other time, or that any other person used drugs in defendant's home. As such, the State has not provided evidence to support the first statutory alternative.

C.

The second statutory alternative requires that defendant knowingly used the dwelling for the keeping or selling of controlled substances. In determining whether a dwelling is so used, courts consider the totality of the circumstances. *Mitchell*, 336 N.C. at 34, 442 S.E.2d at 30.

Our state Supreme Court has held that "keep" "denotes not just possession, but possession that occurs over a duration of time." *Id.* at 32, 442 S.E.2d at 30. Here, the evidence shows that defendant was in possession of 2.1 grams of cocaine at the time of his arrest, but the record contains no evidence that he used his home as a place to "keep" cocaine over a duration of time.

**STATE v. THOMPSON**

[188 N.C. App. 102 (2008)]

The record also lacks sufficient evidence to prove defendant was selling controlled substances. This Court has considered in examining the totality of the circumstances in these cases factors including the amount of drugs present, any paraphernalia (including cutting devices, scales, and containers for distribution) found in the dwelling, the amount of money found in the dwelling, and the presence of multiple cellular phones or pagers. *State v. Battle*, 167 N.C. App. 730, 734, 606 S.E.2d 418, 421 (2005); *see Frazier*, 142 N.C. App. at 363-64, 542 S.E.2d at 685.

There is no bright line test in the statute or the case law regarding how much money, coupled with the presence of drugs, qualifies as substantial evidence to demonstrate an intent to sell. This Court has recently held that "[a]s with a large quantity of drugs, we determine that the presence of cash, alone, is insufficient to infer an intent to sell or distribute." *In re I.R.T.*, 184 N.C. App. 579, 589, 647 S.E.2d 129, 137 (2007). In *I.R.T.*, the juvenile-appellant was adjudicated delinquent by the trial court for possessing crack-cocaine with the intent to sell or distribute after being arrested with a crack-cocaine rock wrapped in cellophane and $271.00 in cash. *Id.* at 581, 647 S.E.2d at 132. There, this Court found that the amount of "unexplained" cash was not sufficient to establish intent to sell or distribute. *Id.* at 589, 647 S.E.2d at 137. In *Battle*, on which defendant in the case at hand relies heavily, the defendant was arrested in a hotel room with 1.9 grams of cocaine, 4.8 grams of marijuana, and $71.00. *Id.* at 731, 606 S.E.2d at 419-20. The Court held "[t]he State's meager evidence of intent to sell cannot be considered 'substantial evidence' supporting the charge of intentionally keeping and maintaining a room for the purpose of selling cocaine." *Id.* at 734-35, 606 S.E.2d at 421. *See also State v. Rosario*, 93 N.C. App. 627, 631, 379 S.E.2d 434, 436, *disc. review denied*, 325 N.C. 275, 384 S.E.2d 527 (1989) (substantial evidence where defendant was arrested in his home with several plastic bags of cocaine, a cocaine grinder, and scales); *State v. McDougald*, 18 N.C. App. 407, 409, 197 S.E.2d 11, 13, *cert. denied*, 283 N.C. 756, 198 S.E.2d 726 (1973) (substantial evidence where the defendant was in possession of 276 grams of marijuana, separated into smaller containers, and defendant attempted to conceal it); *Frazier*, 142 N.C. App. at 363-64, 542 S.E.2d at 685 (substantial evidence where the defendant possessed a small plastic bag containing five individually wrapped rocks of crack cocaine hidden in the bathroom ceiling tiles, a crack pipe, a $20.00 bill on a table, several pagers, two cellular phones, and a wallet containing $1,493.00 in cash).

STATE v. THOMPSON

[188 N.C. App. 102 (2008)]

The State argues that the combination of the amount of cocaine and money present in defendant's possession in the present case is sufficient to indicate that defendant had the intent to sell the drugs. We disagree.

At trial, the State questioned defendant in such a manner as to suggest that he could not possibly have $345.00 in cash on the 23rd day of the month when he only received approximately $500.00 a month in disability benefits. Defendant claimed that his sister received his checks in the mail and cashed them for him, and he still had $345.00 because he had only paid his water bill. The State called Sergeant Peters to the stand to support their theory that defendant received the cash through the sale of cocaine. Sergeant Peters gave his opinion that 2.1 grams of cocaine could be divided into tenths and sold for $20.00 each, but he stipulated that this assertion was speculative and was based on the increments that users typically purchase. Sergeant Peters also said that the fact that defendant's bills were twenties, tens, and fives shows that he was selling the cocaine for those amounts.

It is the opinion of this Court that the officer's testimony does not provide the substantial evidence needed by the State to survive a motion to dismiss. *See State v. Turner*, 168 N.C. App. 152, 158, 607 S.E.2d 19, 24 (2005) (officer's opinion testimony about what people " 'normally' " and " 'generally' " do was not sufficient to show defendant's intent to sell or deliver drugs). Sergeant Peters was presented to evaluate the evidence, but his conjecture as to what defendant was doing with 2.1 grams of cocaine and $345.00 does not amount to additional evidence for the State. The evidence is what was confiscated at defendant's home and the totality of those circumstances are the basis for review.

Defendant had 2.1 grams of cocaine and $345.00 in cash in his pockets, but the record shows no evidence that people were coming and going from his home in a manner to suggest they were buying drugs. The officers who conducted the search did not discover any cutting devices, scales, cell phones, pagers, or containers to package the cocaine. Furthermore, defendant did not admit to selling the drugs; the alleged statement that he used the drugs to "get women" is not an admission of selling drugs or keeping drugs for an extended period of time. It should also be noted that the jury did not find defendant guilty of possession with the intent to sell or distribute, but did find him guilty of mere possession. Finally, there is not such a

large amount of cash, or drugs, or the two in combination to show intent to sell or distribute.

Taking into account the totality of the circumstances, the motion to dismiss the charge of maintaining a dwelling for the keeping and/or selling of controlled substances should have been granted. The trial court's decision is therefore reversed.[1]

III.

[2] Defendant next argues that the Court should remand this case for a new trial on the possession charge only because the trial court failed to intervene *ex mero motu* when the prosecutor made improper closing remarks. After reviewing the prosecutor's statements in context, we conclude that, while some were improper, they do not rise to the level of prejudice that would warrant a new trial.

N.C. Gen. Stat. § 15A-1230(a) (2005) states:

During a closing argument to the jury an attorney may not become abusive, inject his personal experiences, express his personal belief as to the truth or falsity of the evidence or as to the guilt or innocence of the defendant, or make arguments on the basis of matters outside the record except for matters concerning which the court may take judicial notice. An attorney may, however, on the basis of his analysis of the evidence, argue any position or conclusion with respect to a matter in issue.

In interpreting this statute, our state Supreme Court has held:

A lawyer's function during closing argument is to provide the jury with a summation of the evidence, which in turn "serves to sharpen and clarify the issues for resolution by the trier of fact," and should be limited to relevant legal issues. Closing argument is a "reason offered in proof, to induce belief or convince the mind," and "[t]he sole object of all [such] argument is the elucidation of the truth[.]"

*State v. Jones*, 355 N.C. 117, 127, 558 S.E.2d 97, 103-04 (2002) (citations omitted).

As in the case before us "[t]he standard of review for assessing alleged improper closing arguments that fail to provoke timely objec-

---

1. Because we reverse on these grounds, we do not address defendant's second argument that the trial court committed plain error in its instruction to the jury on this charge.

tion from opposing counsel is whether the remarks were so grossly improper that the trial court committed reversible error by failing to intervene *ex mero motu*." *Id.* at 133, 558 S.E.2d at 107.

Defendant claims that the prosecutor demeaned the defense attorney when she stated: "And just because Mr. Turnage cannot pronounce, and I'm not going to try, or understand these tests, does not mean that they were not good tests. . . . This is not something really Mr. Turnage has the knowledge or skill to criticize because he really doesn't know what he's talking about[.]"

After making this comment, the prosecutor added, "I wouldn't know what I was talking about if I tried to either confirm or deny his test results." The Court does not find these two statements taken together to be improper.

Next, defendant claims that the prosecutor demeaned defendant and defendant's nephew, a testifying witness, when she said: "[D]on't look over the fact that [defendant], poor little old weak [defendant], let his parole violating, curfew breaking, prostitute hiring nephew in his house with a crackhead to have sex in his bedroom." There is some evidence in the record supporting this characterization, but taken as a whole, this statement demeans the integrity of the witness and is therefore improper.

Defendant also asserts that the prosecutor shared her personal opinions about the credibility of defendant's nephew, and the S.B.I. agent, both testifying witnesses. The prosecutor made the following statements:

> [I]f we were all in court and had to have one character witness come up here for us, we're all in trouble, if it's Eric Best that comes up here on our behalf. . . .

> If there has been a complete and credible witness in this case, it's [Agent Chris Starks]. . . .

> If Eric Best told you today was Friday I'd go look at the calendar. You cannot believe a word that guy says. He seemed pretty proud of himself, of his little antics and his criminal record. He's not credible at all. . . .

These statements certainly qualify as an improper injection of the prosecutor's opinion regarding the character of these witnesses.

Defendant further argues that the prosecutor improperly appealed to the passions of the jury; specifically, she referred to

defendant as a "link in th[e] chain" of the drug supply line and asked the jury "not to be weak, because you have a chance to make a dent today in that drug trade, a small one, but an important one." We do not find these statements by the prosecutor to be improper.

Where the prosecutor demeaned the witness and injected her personal opinion as to the truthfulness of the evidence, her remarks were clearly improper, but defendant carries the heavy burden of showing that the trial court erred in not intervening on his behalf. In *State v. Davis*, 45 N.C. App. 113, 262 S.E.2d 329 (1980), the Court found that the defendant did not receive a fair trial because the prosecutor called the defendant an " 'S.O.B.' " in his closing argument, which was "highly improper, objectionable, and clearly used to prejudice the jury against defendant." *Id.* at 115, 262 S.E.2d at 330. The Court held "[o]rdinarily, an appellate court does not review the exercise of the trial judge's discretion in controlling jury argument unless the impropriety of the counsel's remarks is extreme and is clearly calculated to prejudice the jury." *Id.*

In *State v. Nance*, 157 N.C. App. 434, 579 S.E.2d 456 (2003), the defendant asserted that he did not receive a fair trial because the prosecutor referred to him as " 'a woman beater, a liar, and a murderer,' " while glaring at the defendant. *Id.* at 442-44, 579 S.E.2d at 461-62. There, however, the defendant objected to each statement, and therefore an abuse of discretion standard applied on appeal. *Id.* at 440, 579 S.E.2d at 460. This Court chose only to reprimand the prosecutor, finding that the "defendant [did] not carr[y] the burden of establishing that the impropriety resulted in prejudice such that his conviction was a denial of due process." *Id.* at 443, 579 S.E.2d at 462.

While *Nance* is analogous in principle, in the instant case defendant did not preserve an objection for appeal, and therefore he now faces an even heavier burden in showing that the trial court erred in not intervening on his behalf. Although some comments were improper in this case, defendant has not proven that they were extreme and calculated to prejudice the jury such that the trial court should have intervened *ex mero motu*.

IV.

[3] Defendant's final argument is that the trial court erred by admitting evidence of the results of the chemical lab tests because the tests were performed by a non-testifying witness, which deprived defendant of his right to confrontation under Article I, Section 23 of the North Carolina Constitution and the Sixth and Fourteenth

Amendments of the United States Constitution. This argument is without merit.

"[A]n expert may base his opinion on tests performed by others if those tests are the type reasonably relied upon by experts in the field." *State v. Carmon*, 156 N.C. App. 235, 244, 576 S.E.2d 730, 737 (2003) (citing *State v. Fair*, 354 N.C. 131, 162, 557 S.E.2d 500, 522 (2001), *cert. denied*, 535 U.S. 1114, 153 L. Ed. 2d 162 (2002)). "The opportunity to fully cross-examine an expert [e]nsures that the defendant's right of confrontation guaranteed by the Sixth Amendment is not violated." *Id.* In the case before us, Agent Stark was qualified as an expert, and defendant had the opportunity to cross-examine him at trial. As such, there was no error.

V.

In summary, the trial court erred in failing to grant defendant's motion to dismiss the charge of maintaining a dwelling used for the keeping and/or selling of controlled substances, and as such, that portion of the conviction is reversed. The conviction for possession of cocaine is affirmed because the prosecutor's closing remarks were not so grossly improper that the trial court committed reversible error by failing to intervene *ex mero motu*, and the testimony of Agent Stark was properly allowed.

No error in part, reversed in part, and remanded for resentencing.

Judges McGEE and BRYANT concur.