IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA17-1365

 Filed: 4 December 2018

Macon County, No. 15CRS051254

STATE OF NORTH CAROLINA

 v.

BRODIE LEE HAMILTON, Defendant.

 Appeal by defendant from judgments entered 27 January 2017 by Judge

William H. Coward in Macon County Superior Court. Heard in the Court of Appeals

17 May 2018.

 Attorney General Joshua H. Stein, by Special Deputy Attorney General Daniel
 P. Mosteller, for the State.

 Meghan Adelle Jones for defendant-appellant.

 BERGER, Judge.

 A Macon County jury convicted Brodie Lee Hamilton (“Defendant”) of multiple

charges of trafficking methamphetamine and one charge of conspiracy to traffic

methamphetamine. For these convictions, the trial court sentenced Defendant to

three consecutive terms of 225 to 282 months in prison, and fined him $750,000.00.

Defendant appeals, alleging the trial court erred in (1) denying his motion to dismiss,

(2) denying his motion for sanctions, and (3) not providing a special instruction to the

jury that had been requested. All three of Defendant’s allegations of error are based
 STATE V. HAMILTON

 Opinion of the Court

on a discovery dispute in which the State had failed to disclose a blank audio

recording. After review, we disagree with Defendant’s contentions and find no error.

 Factual and Procedural Background

 The Macon County Sheriff’s Department received a tip involving drug

transportation along a known methamphetamine trafficking route between Atlanta,

Georgia and Macon County, North Carolina. The information included specific

details about the individuals involved and the vehicle that would be used. Under the

direction of Lieutenant Charles Moody (“Lt. Moody”), the department sought to

intercept the vehicle by monitoring the back roads of Macon County between the pick-

up and drop-off locations.

 On June 19, 2015, Jeremy Stanley (“Stanley”) and Elizabeth Tice (“Tice”) were

stopped in Macon County after failing to stop at a stop sign. Stanley told deputies

that there was a gun in the vehicle, and a trace of its serial number showed the

firearm had been stolen. Both Stanley and Tice were arrested for possession of a

stolen firearm. Stanley told deputies he wanted to talk and had additional

information about the stolen firearm.

 Deputies brought in a K9 unit to conduct a “free air” sniff around the vehicle.

The K9 unit alerted on the vehicle, and deputies located more than two pounds of

methamphetamine in a plastic container behind the driver’s seat.

 -2-
 STATE V. HAMILTON

 Opinion of the Court

 Stanley and Tice were then transported to the Macon County Sheriff’s

Department. Stanley told Lt. Moody that Defendant paid them $17,000.00 to pick up

the methamphetamine in Atlanta. Lt. Moody asked Stanley and Tice if they could

help prove Defendant was involved by setting up a controlled delivery of artificial

methamphetamine. Stanley used Tice’s cell phone to call Defendant, told him that

they had problems with their vehicle, and arranged for someone to pick up the drugs

at the Smokey Mountain Welcome Center. Lt. Moody testified that he “could hear

that there was a person on the other end of the line, but [he] couldn’t hear what was

being said” by that person.

 Defendant was not present at the site of the drug exchange, but instead, the

exchange was carried out by two of Defendant’s associates. Both associates were

arrested on site.

 On December 14, 2015, the Macon County Grand Jury indicted Defendant for

trafficking in methamphetamine by possession, trafficking in methamphetamine by

transportation, and conspiracy to traffic methamphetamine. During Defendant’s

January 2017 trial, defense counsel asked Lt. Moody on cross-examination if he had

attempted to record the telephone conversations between Stanley and Defendant. Lt.

Moody responded:

 I tried to record the telephone call. I don’t normally do that.
 I had a brand-new tape recorder that had just been
 purchased. I just used that and a microphone and a suction
 cup to try to record that call . . . and made that attempt. It

 -3-
 STATE V. HAMILTON

 Opinion of the Court

 wasn’t until sometime later that I realized that there’s no
 – there’s no real conversation that was captured during
 that recording.

Defense counsel then informed the trial court that he was unaware of Lt. Moody’s

attempt to preserve the conversation by audio recording as no such information had

been provided in discovery. Defense counsel was permitted to question Lt. Moody

outside the presence of the jury:

 [Defense Counsel:] So what was actually recorded in that?

 [Lt. Moody:] Nothing.

 [Defense Counsel:] Absolutely nothing?

 [Lt. Moody:] Nothing. An occasional noise, but you
 couldn’t even make out the words. I didn’t
 do a very good job of the installation. I was
 not familiar with the equipment or with
 that particular phone.

 ...

 [Defense Counsel:] So you recorded how many phone calls
 with this device?

 [Lt. Moody:] One.

 [Defense Counsel:] Which one was that?

 [Lt. Moody:] It would have been the first call. And quite
 honestly, I don’t recall if I attempted to
 record the second one or not. I didn’t make
 any attempt to listen to the recording until
 a couple of days after that, and there was
 just nothing there.

 [Defense Counsel:] Do we still have the audiotape?

 -4-
 STATE V. HAMILTON

 Opinion of the Court

 [Lt. Moody:] I don’t think so.

 THE COURT: What happened to it? I mean, is it a
 physical tape? Is it digital information?

 [Lt. Moody:] It would be a digital tape. . . . A digital – a
 digital device.

 THE COURT: Do you still have that device?

 [Lt. Moody:] I don’t know, Your Honor. I listened to it –
 or attempted to listen to the recording
 several times. There was no recording
 there. I had other – at least one other
 officer confirm that there wasn’t anything
 there as well. I don’t know if I didn’t turn
 it on, if – if I used – if I placed the
 microphone on it inappropriately. There
 was no recording there. . . . There was no –
 there was no audible information on the
 recording.

 On January 25, 2017, Defendant filed a motion for sanctions seeking dismissal

of the charges for what he contended was a willful violation of North Carolina’s

discovery statutes and his constitutional rights. The trial court denied his motion for

sanctions.

 On January 27, 2017, Defendant was convicted on all counts, sentenced to

three consecutive terms of 225 to 282 months in prison, and fined $750,000.00.

Defendant appeals, arguing the State’s failure to provide the blank audio recording

in discovery warranted dismissal of the charges against him for violation of his

constitutional rights and North Carolina’s discovery statutes. Defendant also argues

 -5-
 STATE V. HAMILTON

 Opinion of the Court

the trial court erred in denying his motion for sanctions and not providing the jury a

special instruction on spoliation of evidence. We disagree.

I. Motion to Dismiss

 Defendant contends the trial court was required to dismiss all charges for the

State’s failure to preserve and disclose the blank audio recording of the conversation

between Defendant and Stanley. Specifically, Defendant asserts that the State

violated his constitutional rights as set forth in Brady v. Maryland, 373 U.S. 479

(1963), by failing to turn over information that was favorable and material to guilt or

punishment. We disagree.

 Standard of Review

 The standard of review for alleged violations of constitutional rights is de novo.

State v. Graham, 200 N.C. App. 204, 214, 683 S.E.2d 437, 444 (2009).

 Analysis

 A trial court must dismiss criminal charges where a “defendant’s constitutional

rights have been flagrantly violated and there is such irreparable prejudice to the

defendant’s preparation of his case that there is no remedy but to dismiss the

prosecution.” N.C. Gen. Stat. § 15A-954(a)(4) (2017). Defendant has “the burden of

showing the flagrant constitutional violation and of showing irreparable prejudice to

the preparation of his case. This statutory provision contemplates drastic relief, such

that a motion to dismiss under its terms should be granted sparingly.” State v.

 -6-
 STATE V. HAMILTON

 Opinion of the Court

Williams, 362 N.C. 628, 634, 669 S.E.2d 290, 295 (2008) (citation and quotation marks

omitted).

 Pursuant to Brady v. Maryland, “[e]vidence favorable to an accused can be

either impeachment evidence or exculpatory evidence.” Williams, 362 N.C. at 636,

669 S.E.2d at 296. Evidence is material if, had the evidence been disclosed, there is

a reasonable probability of a different result. Kyles v. Whitley, 514 U.S. 419 (1995).

Defendant “has the burden of showing that the undisclosed evidence was material

and affected the outcome of the trial.” State v. Tirado, 358 N.C. 551, 589-90, 599

S.E.2d 515, 541 (2004) (citation omitted). However, Defendant is not required to

demonstrate that disclosure of the evidence would have resulted in acquittal, but

instead, the failure to provide the evidence undermined confidence in the outcome of

the trial. Kyles, 514 U.S. at 434.

 Moreover, when the unpreserved evidence is “potentially useful,” a defendant

must demonstrate “bad faith on the part of the police” in order to show a “denial of

due process of law.” Arizona v. Youngblood, 488 U.S. 51, 58 (1988); see also State v.

Mlo, 335 N.C. 353, 373, 440 S.E.2d 98, 108 (1994); State v. Dorman, 225 N.C. App.

599, 620, 737 S.E.2d 452, 466 (2013). “[R]equiring a defendant to show bad faith on

the part of police both limits the extent of the police’s obligation to preserve evidence

to reasonable bounds and confines it to that class of cases where the interests of

justice most clearly require it.” Youngblood, 488 U.S. at 58. However, “[e]vidence of

 -7-
 STATE V. HAMILTON

 Opinion of the Court

bad faith standing alone, even if supported by competent evidence, is not sufficient to

support a dismissal under N.C. Gen. Stat. § 15A-954(a)(4).” Dorman, 225 N.C. App.

at 622, 737 S.E.2d at 467.

 Here, Defendant had the opportunity to question Stanley about his phone call

with Defendant, cross-examine Lt. Moody about destruction of the blank audio

recording, and argue the significance of the blank audio recording to the jury.

Defendant did just that at trial. Defendant merely demonstrated that the blank

audio recording could have been potentially useful. However, Defendant has failed

to show bad faith on the part of Lt. Moody. It is undisputed that the blank audio

recording had not been disclosed to Defendant and had been subsequently destroyed

by Lt. Moody. Defendant’s highly speculative assertions about Lt. Moody, standing

alone, are insufficient to demonstrate bad faith.

 Moreover, while the evidence may have had the potential to be favorable,

Defendant has failed to demonstrate that the blank audio recording was material. At

trial, it was established that Defendant had orchestrated the procurement of a

significant quantity of methamphetamine with a series of runners and underlings.

Stanley, Tice, and Christopher Prince each provided similar accounts of the role

Defendant had played in financing the operation, obtaining the methamphetamine

in Atlanta, and transporting that contraband to North Carolina. In light of the

 -8-
 STATE V. HAMILTON

 Opinion of the Court

evidence at trial, the Defendant’s speculation about the contents and significance of

a blank audio recording does not undermine confidence in the outcome of his trial.

 Defendant argues that “[s]ilence with occasional noises, would have been

relevant and highly probative evidence in this case,” because it undermined Stanley’s

credibility and “indicates that Stanley fabricated [Defendant’s] involvement.”

Defendant submits that, because the evidence went to Stanley’s credibility, bad faith

need not be shown under Giglio v. United States, 405 U.S. 150 (1972). Giglio v. United

States, however, concerned the failure by the prosecution to disclose the existence of

a promise not to prosecute “the only witness linking petitioner with the crime.” 405

U.S. 150, 151 (1972). That witness had denied the existence of the promise on cross

examination, and the attorney for the government, unaware of the promise, informed

the jury that the witness had received no such concession. Id. The United States

Supreme Court stated that “[w]hen the reliability of a given witness may well be

determinative of guilt or innocence, nondisclosure of evidence affecting credibility

falls within this general rule.” Id. at 154 (citations and quotation marks omitted).

 Such is not the case here. Stanley was not the only link to Defendant’s

involvement in trafficking methamphetamine. Further, to the extent the blank audio

recording implicated any witness’ credibility, it was Lt. Moody’s, not Stanley’s

credibility. Stanley played no part in the installation of the recording equipment on

the phone, or the preservation, destruction, or failure to disclose the existence of the

 -9-
 STATE V. HAMILTON

 Opinion of the Court

blank audio recording. Even if the blank audio recording had been available to

Defendant, the fact that, in substance, it contained no audible information does not

implicate Stanley’s credibility. The jury heard, and was able to weigh, Stanley’s

testimony in light of the fact that the recording was not preserved. Defendant’s

argument is unpersuasive, and we see no error in the trial court’s denial of

Defendant’s motion to dismiss.

II. Trial Court’s Denial of Statutory Sanctions

 Defendant next argues the trial court erred in denying his motion for sanctions

for failure to preserve and disclose the blank audio recording. We disagree.

 Standard of Review

 Our Courts have consistently held that a trial court’s determination on

whether to impose sanctions, pursuant to N.C. Gen. Stat. § 15A-910, for failure to

comply with discovery requirements is reviewed for abuse of discretion. State v. Lane,

365 N.C. 7, 31, 707 S.E.2d 210, 225 (2011); see also State v. Herring, 322 N.C. 733,

747-48, 370 S.E.2d 363, 372 (1988) (“The sanction for failure to make discovery when

required is within the sound discretion of the trial court and will not be disturbed

absent a showing of abuse of discretion.”). A trial court abuses its discretion when its

ruling on discovery related sanctions “was so arbitrary that it could not have been

the result of a reasoned decision.” State v. Allen, 222 N.C. App. 707, 733, 731 S.E.2d

510, 528 (2012) (citation and quotation marks omitted).

 - 10 -
 STATE V. HAMILTON

 Opinion of the Court

 Analysis

 North Carolina’s criminal discovery statutes provide that, for the purposes of

investigation and prosecution, “law enforcement and investigatory agencies shall

make available to the prosecutor’s office a complete copy of the complete files.” N.C.

Gen. Stat. § 15A-903(c) (2017). A file, pursuant to the statute, includes

 defendant’s statements, the codefendants’ statements,
 witness statements, investigating officers’ notes, results of
 tests and examinations, or any other matter or evidence
 obtained during the investigation of the offenses alleged to
 have been committed by the defendant. When any matter
 or evidence is submitted for testing or examination, in
 addition to any test or examination results, all other data,
 calculations, or writings of any kind shall be made
 available to the defendant, including, but not limited to,
 preliminary test or screening results and bench notes.

N.C. Gen. Stat. § 15A-903(a)(1)(a) (emphasis added).

 In addition to contempt, a trial court may impose the following sanctions for

failure to comply with discovery:

 (1) Order the party to permit the discovery or inspection,
 or
 (2) Grant a continuance or recess, or
 (3) Prohibit the party from introducing evidence not
 disclosed, or
 (3a) Declare a mistrial, or
 (3b) Dismiss the charge, with or without prejudice, or
 (4) Enter other appropriate orders.

N.C. Gen. Stat. § 15A-910(a) (2017). Before imposing sanctions, however, the trial

court “shall consider both the materiality of the subject matter and the totality of the

 - 11 -
 STATE V. HAMILTON

 Opinion of the Court

circumstances surrounding an alleged failure to comply.” N.C. Gen. Stat. § 15A-

910(b).

 Pursuant to Section 15A-903(a), Lt. Moody should have not only documented

his efforts to preserve the conversation by audio recording between Stanley and

Defendant, but should have also provided the blank audio file to the District

Attorney’s Office to be turned over to Defendant in discovery because the blank audio

recording constituted “any other matter or evidence obtained during the

investigation.” N.C. Gen. Stat. § 15A-903(a)(1)(a). The statute obviates any

requirement that law enforcement evaluate the evidence to determine if it should be

turned over to the District Attorney’s Office, because anything obtained during the

investigation, regardless of perceived evidentiary value, is required to be preserved,

documented, and disclosed.

 We are not unmindful of the fact that there may be practical barriers for

officers and detectives in the field pursuing leads, interviewing witnesses, and

securing evidence. Mistakes happen, and operating recording equipment can

certainly present problems. Even the most well-intentioned officer can be accused of

running afoul of discovery obligations when human fallibility meets technology. The

solution in these cases is to document the attempt and turn over the item with that

documentation, even if it appears to the officer to lack any evidentiary value.

 - 12 -
 STATE V. HAMILTON

 Opinion of the Court

However, the failure to do so does not necessitate the dismissal of charges, or even

other lesser sanctions.

 At the hearing for Defendant’s Motion for Sanctions, the trial court considered

the materiality of a blank audio file and the circumstances surrounding Lt. Moody’s

failure to comply with his obligation to provide his complete file to the District

Attorney’s Office as required by N.C. Gen. Stat. § 15A-910(b). In denying sanctions,

the trial court considered the evidence presented and arguments of counsel

concerning the recording. It is uncontroverted that Lt. Moody attempted to record

the audio of at least one telephone conversation between Defendant and Stanley.

Lt. Moody was unfamiliar with the recording device he used and was not successful

in preserving the conversation.

 The trial court evaluated Lt. Moody’s testimony in light of his considerable law

enforcement experience and determined that Lt. Moody’s explanation about the

events surrounding the recording was credible. The trial court even asked questions

of Lt. Moody concerning his failure to preserve the audio file, and stated, “I think he

said there was nothing useful on it.” The trial court went on to state:

 I think you’re – you’re speculating as to what happened and
 whether there was any information there. And the second
 line as to whether that information might have been
 exculpatory is further speculation. I can’t sit here and
 presume that because the information is not there that it’s
 exculpatory without more, and certainly not with
 Lieutenant Moody’s experience and reputation. I would
 want more to indulge in any such presumption. It sounds

 - 13 -
 STATE V. HAMILTON

 Opinion of the Court

 like to me, just to be candid with you, that he bought a piece
 of electronics and he didn’t quite figure out how to use it,
 because of the gray hair on his head, that the electronics
 and the details of how to use a new toy like that just didn’t
 – didn’t make it into his skill set before he tried to use it.
 That’s what it sounds like to me.
 ...

 Nothing came through. Not – not the defendant’s voice,
 nobody’s voice. That was what I understood from what he
 said. There was nothing there.

There is nothing in the record that suggests the trial court’s decision not to impose

sanctions was so arbitrary that it could not have been the result of a reasoned

decision, and we conclude the trial court did not abuse its discretion.

III. Requested Instruction

 Defendant alleges the trial court erred when it failed to provide the following

requested instruction to the jury:

 When evidence has been received which tends to show that
 an audio recording of alleged phone calls between Jeremy
 Stanley and the Defendant was in the exclusive possession
 of the Macon County Sheriff’s Office, has been destroyed
 and that the Sheriff’s Office had notice and understanding
 of its obligations to preserve and provide its complete
 investigative file to the Defendant, you may infer, though
 you are not compelled to do so, that audio recordings would
 be damaging to the State’s case. You may give this
 inference such force and effect as you determine it should
 have under all of the facts and circumstances.

We disagree.

 Standard of Review

 - 14 -
 STATE V. HAMILTON

 Opinion of the Court

 “[Arguments] challenging the trial court’s decisions regarding jury instructions

are reviewed de novo by this Court.” State v. Osorio, 196 N.C. App. 458, 466, 675

S.E.2d 144, 149 (2009). “[A]n error in jury instructions is prejudicial and requires a

new trial only if ‘there is a reasonable possibility that, had the error in question not

been committed, a different result would have been reached at the trial out of which

the appeal arises.’ ” State v. Castaneda, 196 N.C. App. 109, 116, 674 S.E.2d 707, 712

(2009) (quoting N.C. Gen. Stat. § 15A-1443(a) (2007)).

 Analysis

 “It is the duty of the trial court to instruct the jury on all substantial features

of a case raised by the evidence.” State v. Shaw, 322 N.C. 797, 803, 370 S.E.2d 546,

549 (1988) (citation omitted). “Failure to instruct upon all substantive or material

features of the crime charged is error.” State v. Bogle, 324 N.C. 190, 195, 376 S.E.2d

745, 748 (1989) (citation omitted). “The trial court must give a requested instruction

that is supported by both the law and the facts.” State v. Nicholson, 355 N.C. 1, 67,

558 S.E.2d 109, 152 (2002) (citation omitted).

 This Court has previously determined that “destruction of evidence does not

amount to the denial of a fair trial unless the defendant can establish (1) the police

destroyed the evidence in bad faith; and (2) ‘the missing evidence possessed an

exculpatory value that was apparent before it was lost.’ ” State v. Nance, 157 N.C.

App. 434, 444, 579 S.E.2d 456, 463 (2003) (quoting State v. Hunt, 345 N.C. 720, 725,

 - 15 -
 STATE V. HAMILTON

 Opinion of the Court

483 S.E.2d 417, 421 (1997)). In State v. Nance, this Court found the trial court did

not err when it declined to give a special instruction requested by the defendant

concerning lost evidence because defendant failed to meet both prongs of the test set

forth in Hunt. Id. at 445, 579 S.E.2d at 463.

 Such is the case here. Again, Defendant has failed to establish bad faith on

the part of Lt. Moody, and, beyond mere speculation, Defendant has failed to show

that the blank audio recording contained any exculpatory evidence. As in Nance, the

trial court did not err when it declined to instruct the jury as requested by Defendant.

 Conclusion

 “Although defendant may not have received a perfect trial, we are confident,

after a thorough review of his case, that he received a fair trial.” State v. Ligon, 332

N.C. 224, 243, 420 S.E.2d 136, 147 (1992) (quotation marks omitted). As such, we

find no error.

 NO ERROR.

 Judges DIETZ and TYSON concur.

 - 16 -